No. 66,102

SHAWN A. LEIKER *et al.*, *Plaintiffs*, v. WENDELL P. GAFFORD, *Defendant/Appellee*; PROFESSIONAL ANESTHESIA, INC., A CORPORATION, *Defendant/Appellant*; GEORGE W. MARSHALL, M.D.; HARRIS, HODGES & MARSHALL, CHTD., A PROFESSIONAL CORPORATION; AND ABBOTT LABORATORIES, A CORPORATION, *Defendants*, and RONALD TODD, COMMISSIONER OF INSURANCE OF THE STATE OF KANSAS, ADMINISTRATOR OF THE HEALTH CARE STABILIZATION FUND, *Intervenor/Appellee*.

(819 P.2d 655)

Opinion filed October 25, 1991.

*Ronald D. Heck*, of Heck & Sheppeard, P.A., of Topeka, argued the cause, and *Cynthia J. Sheppeard*, of the same firm, was with him on the brief for appellant.

*Thomas V. Murray*, of Barber, Emerson, Springer, Zinn & Murray, of Lawrence, argued the cause, and *Payne H. Ratner, Jr.*, and *Randall H. Elam*, of Ratner, Mattox, Ratner, Kinch & Brimer, P.A., of Wichita, were with him on the brief for intervenor/appellee.

The opinion of the court was delivered by

HOLMES, C.J.: Professional Anesthesia, Inc., appeals from an order of the district court denying its cross-claim for indemnification from Wendell P. Gafford. We affirm.

The facts necessary for a determination of the issues in this appeal are not in dispute and arise out of the underlying medical malpractice judgment in *Leiker v. Gafford*, 245 Kan. 325, 778 P.2d 823 (1989). Shawn A. Leiker died as a result of the negligent administration of anesthesia by Wendell P. Gafford, a certified registered nurse anesthetist employed by Professional Anesthesia. In the underlying case (*Gafford I*), the action was originally filed by James S. Leiker in his representative capacity as the husband and next friend of Shawn A. Leiker, and in his individual capacity. While the proceedings were pending in district court, Shawn A. Leiker died and the pleadings were amended to include James S. Leiker as Special Administrator of Shawn's estate and as representative of the minor children. The defendants in *Gafford I* were Wendell P. Gafford; Professional Anesthesia, Inc., a corporation wholly owned and controlled by defendant Gafford; George W. Marshall, M.D., the attending physician; his professional corporation; and Abbott Laboratories. Professional Anesthesia filed a cross-claim for indemnification against Gafford. The trial court deferred any action on the cross-claim until final resolution of the action between Leiker and the defendants. The jury determined that Gafford was 90% at fault and Marshall was 10% at fault. The judgment, in excess of two million dollars, was entered against Gafford, Marshall, and their respective corporations. The liability of Professional Anesthesia was predicated solely upon its vicarious liability as the employer of Gafford under the doctrine of respondeat superior.

Following our decision in *Gafford I*, the trial court considered the cross-claim of Professional Anesthesia against Gafford in which the corporation sought indemnification for any damages it might be required to pay to Leiker and for its attorney fees incurred in defending the underlying action. As Gafford apparently had no intention of defending against the cross-claim, Fletcher Bell, as Kansas Commissioner of Insurance, intervened to represent the interests of the Kansas Health Care Stabilization Fund (Fund). The trial court denied the cross-claim and Professional Anesthesia has appealed. Ronald Todd, the successor to Fletcher Bell, has now been substituted as the intervenor/appellee on behalf of the Fund. Additional facts will be considered as they become relevant to the issues on appeal. The case was transferred from the Kansas Court of Appeals pursuant to K.S.A. 20-3018(c).

Professional Anesthesia raises two issues on appeal:
(1) whether Professional Anesthesia can be allowed to seek indemnification from codefendant Wendell P. Gafford; and
(2) whether indemnification of Professional Anesthesia can include attorney fees for defense of the corporation.

Although phrased as two issues, the initial determination for this court is whether, when an employer has been found vicariously liable in a negligence action under the doctrine of respondeat superior, an employer may recover attorney fees incurred in the defense of the underlying action when the employer will not be required to pay any part of the judgment rendered against the employee tortfeasor.

In the instant case, it is asserted by the intervenor and not controverted by Professional Anesthesia that the entire judgment against Gafford and Professional Anesthesia has been or will be paid by Gafford's malpractice insurance carrier and the Fund. Therefore, even though a judgment was rendered against Professional Anesthesia on the theory of respondeat superior it will not be required to pay any part of the judgment.

We pause to note that the Kansas Legislature recently passed legislation that eliminates vicarious tort liability in medical malpractice cases involving multiple health care providers who are qualified for coverage by the Kansas Health Care Stabilization Fund. See K.S.A. 1990 Supp. 40-3403(h). That legislation applies

only to claims filed after July 1, 1986, and therefore has no application to this action, which arose prior to that time.

In the recent case of *Bair v. Peck*, 248 Kan. 824, 811 P.2d 1176 (1991), wherein we held K.S.A. 1990 Supp. 40-3403(h) to be constitutional, we explained the doctrine of respondeat superior and vicarious liability as follows:

"[T]he common-law doctrine of vicarious liability has long been a part of Kansas negligence law. The doctrine was succinctly explained in *Simpson v. Townsley*, 283 F.2d 743 (10th Cir. 1960), where the court stated:

'Under the law of Kansas, there is no distinction between the liability of a principal for the tortious acts of his agents and the liability of a master for the tortious acts of his servant. In both relationships, the liability is grounded upon the doctrine of respondeat superior. Under that doctrine, the liability of the master to a third person for injuries inflicted by a servant in the course of his employment is derivative and secondary and that of the servant is primary.

. . . .

'Moreover, under the law of Kansas, while a master whose liability is predicated solely on the doctrine of respondeat superior and not on any wrong on his part may be sued jointly with his servant for a tort committed by the latter within the scope of his employment, *they are not joint tortfeasors in the sense they are equal wrongdoers.* Where a master becomes liable to a third person for personal injuries caused solely by the act of his servant, under the doctrine of respondeat superior, and is required to respond to such third person in damages by reason of such liability, he will be subrogated to the rights of the injured third person and may recover over from his servant who is primarily liable.' 283 F.2d at 746.

"The modern theory underlying the common-law doctrine has been described by one authority as follows:

'What has emerged as the modern justification for vicarious liability is a rule of policy, a deliberate allocation of a risk. The losses caused by the torts of employees, which as a practical matter are sure to occur in the conduct of the employer's enterprise, are placed upon that enterprise itself, as a required cost of doing business. They are placed upon the employer because, having engaged in an enterprise, which will on the basis of all past experience involve harm to others through the torts of employees, and sought to profit by it, it is just that he, rather than the innocent injured plaintiff, should bear them; and because he is better able to absorb them, and to distribute them, through prices, rates or liability insurance, to the public, and so to shift them to society, to the community at large.' Prosser and Keaton on Torts § 69, pp. 500-01 (5th ed. 1984).

As a practical matter vicarious liability was recognized as a method of providing a source of recovery for the innocent victim of another's negligence when the actual tortfeasor was unable to respond financially for the damage caused." 248 Kan. at 829-30.

In the present case, Professional Anesthesia seeks indemnification not for any money it has paid to Leiker on the judgment but solely for its attorney fees incurred in defending the underlying action. Indemnification is a creature of equity and has its origin in the common law: "The doctrinal basis for non-contractual indemnity among tortfeasors is unjust enrichment. The right is 'restitutional in nature, and is based on inherent injustice.' " *United Air Lines v. Wiener*, 335 F.2d 379, 398-99 (9th Cir. 1964) (quoting Davis, *Indemnity Between Negligent Tortfeasors; a Proposed Rationale*, 37 Iowa L. Rev. 517, 538 [1952]).

In other words, the basis for indemnity is equity and restitution. 41 Am. Jur. 2d, Indemnity § 1 provides:

"The word 'indemnity' is defined by lexicographers to mean 'security or protection against hurt or loss or damage.' The word appears to be used . . . in the sense of compensating for actual damage. . . . In other words, indemnity is a right which inures to a person *who has discharged a duty which is owed by him but which, as between himself and another, should have been discharged by the other.*" (Emphasis added.)

See Restatement of Restitution § 86 (1936); Restatement (Second) of Torts § 886B (1977). In addition, Restatement (Second) of Agency § 401, comment d (1957) provides, in relevant part: "Thus a servant who, while acting within the scope of employment, negligently injures a third person, although personally liable to such person, is also subject to liability to the principal *if the principal is thereby required to pay damages.*" (Emphasis added.)

41 Am. Jur. 2d, Indemnity § 32, explains that the necessity for *actual* damage to the indemnitee is a condition precedent to the liability of the indemnitor:

"A contract of indemnity implied by law in favor of one who is legally liable for the negligence of another has been held to cover loss or damage and not merely liability. Therefore, . . . *a cause of action for indemnity based on tort does not accrue until the indemnitee has suffered an actual loss.*" (Emphasis added.)

Simply because one has been found liable for an obligation of another, it does not necessarily follow that one is entitled to

indemnification. A condition precedent to indemnification is that the indemnitee must actually have paid on the obligation for which he seeks indemnification. Justice Cardozo, in *Schubert v. Schubert Wagon Co.*, 249 N.Y. 253, 164 N.E. 42 (1928), reasoned that where a master is found. liable for the act of his servant, though not personally at fault, he may recover from the servant only after he has paid the loss. The master is not entitled to recover from the servant upon the mere attachment of liability: "Loss there must be, not merely liability, before indemnity is due. [Citations omitted.] The servant shall respond when the master shall have paid." *Schubert*, 249 N.Y. at 257-58.

Similarly, the Montana Supreme Court held that a party is not entitled to indemnity until payment has been made. "It follows that the right of indemnity does not arise . . . until payment has been made. This is because, if the employee . . . paid the judgment, the employer . . . never did have a right to be indemnified." *St. Paul Fire Ins. Co. v. Thompson*, 152 Mont. 396, 403, 451 P.2d 98 (1969). As authority for this proposition, the Montana court relied upon *Gaffner v. Johnson*, 39 Wash. 437, 438-39, 81 Pac. 859 (1905), wherein the Washington court stated: "No cause of action accrued to the master, as against the servant, *until the master was compelled to pay the party injured by the act of the servant.* 20 Am. & Eng. Ency. Law (2d ed.), 51, 52." (Emphasis added.)

This principle is also recognized in Kansas. In *Missouri Pacific Railroad Co. v. City of Topeka*, 213 Kan. 658, 662, 518 P.2d 372 (1974), the Kansas Supreme Court reiterated when the right to indemnification accrues: "[I]t is a right which inures to a person who *has fulfilled an obligation owed by him* but which as between himself and another person should have been discharged by the other." (Emphasis added.)

Counsel in the present case candidly concede that they have found no case which allows indemnification for attorney fees and expenses incurred by the employer when the employee tortfeasor has fully satisfied the judgment rendered against both the employee and the employer.

Both Professional Anesthesia and intervenor cite to Kansas cases that address the issues of indemnification and attorney fees. Professional Anesthesia relies upon *Simpson v. Townsley*, 283

F.2d 743 (10th Cir. 1960), and *Fenly v. Revell*, 170 Kan. 705, 228 P.2d 905 (1951), for the proposition that Kansas law recognizes the doctrine of implied indemnity. However, both of those cases adhere to the rule that the right to indemnity does not accrue until the master "is required to respond to such third person in damages." *Simpson*, 283 F.2d at 746. See *Fenly*, 170 Kan. at 707-08.

Other cases relied upon by Professional Anesthesia are clearly distinguishable on their facts and do not support appellant's position. See *Prickett v. Hawkeye-Security Insurance Company*, 282 F.2d 294 (10th Cir. 1960) (determination of liability between two insurance carriers in automobile accident damage action); *City of Fort Scott v. Penn Lubric Oil Co.*, 122 Kan. 369, 252 Pac. 268 (1927) (actual damages paid to injured third party in a sidewalk fall case); *Ireland v. Bank*, 103 Kan. 618, 176 Pac. 103 (1918) (action on a contractual indemnity bond); *City of Topeka v. Brooks*, 99 Kan. 643, 164 Pac. 285 (1917) (contractual liability under a surety bond); *Bourke v. Spaight*, 80 Kan. 387, 102 Pac. 253 (1909) (action on a negotiable instrument). None of the cited cases hold that in an implied indemnity action wherein the employer's liability was based upon respondeat superior, an employer may recover attorney fees from the employee without having made any payment to the third party damaged by the employee's negligence.

In the case now before this court, Professional Anesthesia has not "been compelled to pay any third person" and the judgment will be satisfied in full by Gafford's malpractice carrier and the Fund. Professional Anesthesia has not discharged any obligation to Leiker on the underlying judgment, and therefore, Professional Anesthesia is not entitled to bring this action for indemnification. Although indemnification, in an appropriate case, may include reasonable attorney fees incurred in the underlying action, such fees alone do not constitute the requisite damages necessary to support an action for implied indemnity, nor do such fees equate to payment on an obligation to a third person. More specifically, the attorney fees incurred by Professional Anesthesia are not a payment to Leiker on the underlying judgment. The authorities relied upon by Professional Anesthesia only address attorney fees as part of the amount recoverable once indemnity is allowed.

Here, Professional Anesthesia, not having paid any of the underlying judgment, is not entitled to indemnity, and therefore, the cases it relies upon are not persuasive. Generally, in Kansas, absent an applicable Supreme Court rule or express contractual or statutory authority to the contrary, parties bear the cost of their own attorney fees. *Chetopa State Bancshares, Inc. v. Fox*, 6 Kan. App. 2d 326, 333, 628 P.2d 249, *rev. denied* 229 Kan. 669 (1981).

We conclude that the overwhelming majority, if not all, of the authorities require that an employer seeking indemnification for damages suffered under the doctrine of respondeat superior must first have incurred such damages by way of actual payment to the third-party victim. Absent any such payment, the common-law right to implied indemnity does not apply.

In view of the foregoing, other issues and arguments raised by industrious and able counsel need not be addressed.

The judgment is affirmed.

SIX, J., not participating.

TERRY L. BULLOCK, District Judge, assigned.