Titus L. DANIELS; Michael P. Koch; Rodney E. Pace; and Mark A. Wendt, on Behalf of Themselves and All Others Similarly Situated, Plaintiffs,

v.

BOARD OF TRUSTEES OF the HERINGTON MUNICIPAL HOSPITAL; and The Board of Commissioners of the County of Dickinson, d/b/a Southeast Dickinson County Emergency Medical Service, Defendants.

No. 92–1143–PFK.

United States District Court, D. Kansas.

Dec. 2, 1993.

Ray Simmons, Wichita, KS, for plaintiffs.

Lee H. Woodard, of Woodard, Blaylock, Hernandez, Pilgreen & Roth, Wichita, KS, for defendant Herington Hosp.

Douglas F. Martin, of Porter, Fairchild, Wachter & Haney, Topeka, KS, for defendant Dickinson County.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, Chief Judge.

This matter comes before the court on two motions for summary judgment, one filed by defendant Board of Commissioners of the County of Dickinson (County) and the other filed by defendant Board of Trustees of the Herington Municipal Hospital (Hospital). The court heard the parties' arguments on October 25, 1993, and then adjourned to review and consider the arguments. The court is now ready to make the following findings of fact and conclusions of law.

Prior to filing this suit, plaintiffs' attorney sent a demand letter to the Hospital's administrator offering to settle any Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, dispute for $381,500.00, which included $217,954.80 for back wages plus liquidated damages and attorney fees. (Hospital's Memo. in Opp. to County's Motion for Summ. Judg., Peterson Aff. at ¶ 11 & Ex. C.) This offer was rejected. On March 23, 1992, four emergency medical technicians who worked for the Southeast Dickinson County Emergency Medical Service (EMS) filed this suit seeking a class action against the Hospital and County, claiming defendants violated the FLSA by not properly compensating plaintiffs for overtime worked and on-call time. (Complaint at ¶¶ 12–24.) The Hospital answered, counterclaimed against plaintiff Rodney E. Pace, director of the EMS, and cross-claimed against the County. The cross-claim alleged the County was contractually bound to reimburse the Hospital for any judgment entered against the Hospital as well as the Hospital's attorney fees, costs and expenses. (Hospital's Answer, Counterclaim and Cross–

Claim at 10, ¶¶ 7–8.) The County then answered and cross-claimed against the Hospital. In its cross-claim, the County asserts that if it "is responsible for any of Plaintiffs' claims, then Hospital has breached its contractual responsibilities, and the Hospital is liable to Dickinson County for any such claims recovered by Plaintiffs." (County's Answer & Cross–Claim at 6, ¶ 9.) The County also claims that if it is responsible for any of plaintiffs' claims, then the Hospital has "negligently performed its duties" under the County and Hospital's contracts, such negligence was the proximate cause of the County's damages, and therefore the Hospital is liable to the County for any claims recovered by plaintiffs from the County. (*Id.* at 6, ¶ 10.) The County later amended its answer and cross-claim against the Hospital; however, the allegations contained in the cross-claim remained the same. (*See* County's First Amended Answer & First Amended Cross–Claim at 6–7, ¶¶ 9–10.)

On November 3, 1992, this court approved the plaintiffs' voluntary dismissal of the County without prejudice for the reasons stated in *Burnison et al. v. Memorial Hospital, Inc. and the City of McPherson, Kan.,* No. 91–1072–MLB, 1992 WL 321608 (D.Kan. Oct. 7, 1992). (Partial Stip. of Vol.Dism. at 1.) In *Burnison,* the plaintiffs, 12 emergency medical technicians and paramedics employed by Memorial Hospital, Inc., brought an action alleging violations of the FLSA. Memorial Hospital was a privately-owned hospital which operated the McPherson EMS under an agreement with the City of McPherson (City) and McPherson County. The City moved for summary judgment. Judge Belot found the City had delegated "its responsibility for establishing the standards for the operation of an emergency medical service and the qualifications and training of its personnel" by contracting with Memorial Hospital to provide emergency medical service to the community. *Burnison,* slip op. at 6. Next, the court found that although the City paid Memorial Hospital to perform this service, the City was not the plaintiffs' employer. *Id.* at 9.

In May 1993, the Hospital commenced negotiations for a settlement with the plaintiffs.

Plaintiffs offered to dismiss their action without prejudice for $55,000.00, (Hospital's Memo. Brief, Smith Aff. at ¶ 2.) On June 14, 1993, the plaintiffs and the Hospital entered into a stipulated release and settlement agreement. This court approved the parties' journal entry of dismissal which dismissed the plaintiffs' action with prejudice. According to the settlement agreement, the Hospital agreed to pay the plaintiffs $29,250.00; this amount was considered wages. In addition, the Hospital agreed to pay $19,500.00 for attorneys' fees and $3,750.00 for litigation expenses. (Journal Entry of Dismissal, Exhibit A at 2.) Thus, the Hospital's settlement costs totaled $52,500.00. Throughout this litigation the Hospital has maintained that it is compensating its EMS employees in accordance with the FLSA in regard to on-call time and continues to pay them for on-call time under the Hospital's established formula.

The defendants' cross-claims remain to be resolved and are the basis for their motions for summary judgment. Therefore, a review of the relationship between the County and Hospital is necessary. In 1979 the Kansas Legislature amended K.S.A. §§ 19–261 and –262 to allow boards of county commissioners to provide ambulance services either as a county function or by contract with any city, person, firm, or corporation. Ch. 186, § 20, 1979 Kan.Sess.Laws 895–96; Ch. 69, § 2, 1979 Kan.Sess.Laws 466–67. On February 29, 1980, in accordance with these statutes, the Hospital and the County entered into an agreement in which the County established a "county ambulance service by granting the power of administration to the Board of Trustees of Hospital." (County's Answer and Cross–Claim, Exhibit A at ¶ 2.) The agreement further provided:

3. Hospital shall establish the office of Director of Ambulance Service who shall be appointed by and directly responsible to and under the direction of said Hospital Board. The Director of Ambulance Service shall administer and supervise the ambulance service, and any other duties assigned to him by the Board of Trustees.

. . . .

7. It is the mutual desire of County and Hospital that ambulance service be self-supporting. Hospital shall make every effort to ensure the ambulance service is self-supporting. County and Hospital recognize, however, that expenditures may exceed income. In the event income shall exceed expenditures for any month, then County shall be credited with said amount to be applied to the next month in which income does not exceed expenditures. In the event expenditures shall exceed income, then County shall pay to Hospital the difference between the income and expenditures, less any credits carried over from previous months.

(*Id.* at 2, 4.) The agreement was amended on November 21, 1986, but that amendment does not affect the defendants' current dispute. (*See* County's Answer & Cross–Claim, Ex. B.)

In 1988, K.S.A. §§ 19–261 and –262 were repealed and replaced with a new statutory scheme for emergency medical services, K.S.A. § 65–6101 *et seq.* The new scheme provides in part:

> The governing body of any municipality may establish, operate and maintain an emergency medical service or ambulance service as provided in this act as a municipal function and may contract with any person, other municipality or board of a county hospital for the purpose of furnishing emergency medical services or ambulance services within or without the boundaries of the municipality upon such terms and conditions and for such compensation as may be agreed upon which shall be payable from the general fund of such municipality or from a special fund for which a tax is levied under the provisions of this act.

K.S.A. § 65–6113(a). Section 65–6115 expressly authorizes any municipality to continue the operation of an EMS or ambulance service established under any statute repealed by the new act, whether operated directly by the municipality or by another entity under contract with the municipality.

The County has continued to provide EMS under its 1979 contract with the Hospital. Each year the Hospital's EMS director and the Hospital's administrator prepare a proposed EMS budget which is presented to the county commissioners. Actual wage expenses, however, often exceed the projected wage expenses. For example, in 1991, the projected wages were $106,546.31 but the County reimbursed the Hospital $118,817.04 for wage expenses.

After reaching a settlement agreement with plaintiffs, the Hospital's business manager submitted an expenditure statement totaling $104,349.94 to the County. This statement included the $52,500.00 settlement, plus related payroll costs of $2,932.02 and $48,-917.92 for the Hospital's attorney fees. (Hospital's Memo. in Opp. to County's Motion for Summ.Judg., Ollenberger Aff. at ¶ 10.) Phico Insurance Company insured the Hospital under a "Health Care Provider's Comprehensive Liability Policy." Phico denied coverage for the plaintiffs' FLSA claims, but agreed to defend the Hospital under a reservation of rights. When the Hospital reached a settlement with the plaintiffs, the agreed-upon settlement amount, $52,500.00, was paid by the Hospital, not Phico. The Hospital never passed on any of the Phico policy premium expenses to the County. (*Id.* at ¶ 11.) Phico, however, did pay $26,657.19 for the Hospital's attorney fees and this amount is included in the $104,349.94 for which the Hospital seeks reimbursement by the County. (*Id.* at ¶ 10.) The County has refused to pay any of the $104,349.94 statement submitted by the Hospital.

■ ▪Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, the court must resolve all disputed facts in favor of the nonmoving party. *White v. General Motors Corp., Inc.*, 908 F.2d 669, 670 (10th Cir.1990), *cert. denied*, 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991). The moving party must prove beyond a reasonable doubt that it is entitled to summary judgment. *Norton v. Liddel*, 620 F.2d 1375, 1381 (10th Cir.1980).

The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing of an essential element of the case to which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The existence of some disputed facts does not automatically preclude granting summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). One of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53.

The County makes several arguments for why summary judgment should be entered in its favor. Before addressing those arguments, however, the court shall address the County's alternative motion to dismiss this suit pursuant to 28 U.S.C. § 1367(c)(3). The county contends this action should be dismissed because the plaintiffs' original federal claims have been dismissed, and thus the court may decline to exercise supplemental jurisdiction over the remaining state law claims between the County and the Hospital.

Section 1367 was enacted as part of the Judicial Improvements Act of 1990, 104 Stat. 5113, and was designed to codify the pendent jurisdiction doctrine announced in *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). 7B *Moore's Federal Practice* § 1367, p. JC 559 (1993). Section 1367(c) codifies the discretionary basis for declining pendent jurisdiction. *Id.* The Tenth Circuit has stated a district court has jurisdiction to try pendent state law claims in the absence of any triable federal claim if "the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction." *Thatcher Enterprises v. Cache County Corp.,* 902 F.2d 1472, 1478 (10th Cir.1990).

Considering the time and effort the parties have spent on this dispute while it has been pending in this court, the court finds judicial economy and convenience to the parties are served by retaining jurisdiction. Thus, the County's motion to dismiss pursuant to 28 U.S.C. § 1367(c)(3) is denied.

Next, the County contends the Hospital's cross-claim is barred by K.S.A. § 12–105b, which provides in part:

(a) All claims against a municipality must be presented in writing with a full account of the items, and no claim shall be allowed except in accordance with the provisions of this section. A claim may be the usual statement of account of the vendor or party rendering a service or other written statement showing the required information.

In *Unified School Dist. No. 457, Finney County, Kan. v. Phifer,* 729 F.Supp. 1298, 1306 (D.Kan.1990), Judge Crow found K.S.A. § 12–105b "was intended to encompass all claims against a municipality, contractual in nature or not." The court further stated the requirements of § 12–105b are conditions precedent and thus must be pleaded in compliance with Fed.R.Civ.P. 9(c).

In response, the Hospital argues that under the circumstances it complied with K.S.A. § 12–105b as much as possible. Section 12–105b does not appear to allow for a contingent and derivative claim based upon a contract such as is involved here. The Hospital sent the County a copy of the plaintiffs' demand letter. Moreover, after settling the dispute with the plaintiffs, the Hospital submitted a written claim totaling $104,349.94 to the County on July 19, 1993, and again on August 3, 1993. The County has refused to pay this claim. The Hospital further contends the County is estopped from raising K.S.A. § 12–105b as a defense because the County also did not comply with that statutes' provisions before it filed its cross-claim against the Hospital. Finally, in the alternative, the Hospital requests the opportunity to amend its cross-claim to comply with K.S.A. § 12–105b.

When the County answered the Hospital's cross-claim, it had the right to raise K.S.A. § 12–105b as a defense, but it did not. (*See* County's Answer to Hospital's Cross-Claim.) In fact, three days prior to filing that answer, the County filed its answer to

368

plaintiffs' complaint and a cross-claim against the Hospital without complying with K.S.A. § 12–105b. (*See* County's Answer & Cross–Claim.) Therefore, the court finds the County waived its right to raise K.S.A. § 12–105b now as a defense to the Hospital's cross-claim. *Yates v. American Republics Corp.,* 163 F.2d 178, 179 (10th Cir.1947) (litigants may waive their rights through acts, conduct, declarations, acquiescence, or silence). Likewise, the Hospital also is estopped from raising that statute as a defense.

▪ To resolve the remaining issue of whether the Hospital can look to the County to reimburse it for the expenses arising out of the suit plaintiffs filed against the Hospital, the court must look to the agreement between the Hospital and the County, particularly ¶ 7. The County contends the Hospital seeks indemnification which is disfavored under Kansas law. The Kansas Supreme Court has defined indemnification as:

an obligation resting on a party to make good any loss another has incurred while acting at his request or for his benefit; it is a right which inures to a person who has fulfilled an obligation owed by him but which as between himself and another person should have been discharged by the other. In construing a contract of indemnity and determining the rights and liabilities of the parties thereunder, the important question to be determined is the intention of the parties, and effect should be given to that intention if such can be done consistently with legal principles. Doubts arising from ambiguity or obscurity in the language used are to be resolved against the party preparing the contract. . . .

*Missouri Pac. R.R. Co. v. City of Topeka,* 213 Kan. 658, 662, 518 P.2d 372 (1973) (citations omitted). The court further stated "that an exculpatory agreement is to be construed strictly and its terms will not be extended to situations not plainly within the language used." *Id.* at 664, 518 P.2d 372. Exculpatory clauses in private contracts, however, are upheld unless the agreement is contrary to public policy or is illegal. *Corral v. Rollins Protective Services Co.,* 240 Kan. 678, 681, 732 P.2d 1260 (1987).

Here, the Hospital and the County agree that the terms of their agreement are unambiguous but disagree on how those terms should be interpreted. (County's Motion for Summ.Judg. at 9–10; Hospital's Memo. in Opp. to County's Motion for Summ.Judg. at 22.) The court also finds the terms to be unambiguous. Paragraph 7 states in part: "In the event expenditures shall exceed income, then County shall pay to Hospital the difference between the income and expenditures, less any credits carried over from previous months." Giving these terms their plain meaning, ¶ 7 clearly states the County must pay the Hospital for any expenses that exceed income. *See Black's Law Dictionary* 518 (5th ed. 1979) (expenditure is defined as "[s]pending or payment of money; the act of expending, disbursing or laying out of money; payment"). Thus, the court finds the Hospital's expenses arising out of plaintiffs' suit are expenditures within the meaning of ¶ 7.

The County argues expenditures cannot refer to the cost of defending against alleged FLSA violations. Assume for the sake of argument that plaintiffs had not been compensated properly for overtime worked. If, over the years, the Hospital had paid the correct overtime wages, the Hospital would have been reimbursed by the County for the higher overtime wage expense. Moreover, when an employer-employee relationship exists, the employer is open to having suits filed against it despite any lack of fault on the employer's part. This is one of the costs of doing business.

▪ The County argues an employer cannot seek indemnification for its FLSA violation because to do so violates public policy. For support, the County cites *Martin v. Gingerbread House, Inc.,* 977 F.2d 1405 (10th Cir.1992). In that case, the Secretary of Labor, on behalf of four employees, brought an action against Gingerbread House, Inc. and two individuals for violating the FLSA. The defendants then filed a third party complaint for indemnity against the four employees named in the Secretary's complaint. The Tenth Circuit addressed for the first time the issue of whether filing a third party complaint seeking indemnification is unlawful re-

taliation under the FLSA. The court reached the following conclusion:

> Indemnity actions against employees work against the purposes of the FLSA.... Compliance with the FLSA will not be furthered if employees must defend against indemnity actions. Such actions are not part of the comprehensive statutory scheme set forth by Congress.... We therefore hold that a third party complaint by an employer seeking indemnity from an employee is preempted.

*Id.* at 1407–08.

*Martin* is clearly distinguishable from the case currently under consideration. The Hospital is not seeking indemnification from an employee, but rather, from the County for which the Hospital has agreed to provide EMS. Pursuant to their agreement the County is responsible for the Hospital's expenditures that exceed income. Furthermore, following a bench trial in *Martin*, the court found the defendants had violated the FLSA. *Id.* at 1406. Here, no such finding has been made, the Hospital has not admitted any FLSA violation, nor has the County presented evidence proving the Hospital violated the FLSA. In fact, public policy supports the Hospital's position in that the law favors settlement. *Sears v. Atchison, Topeka & Santa Fe Ry. Co.*, 749 F.2d 1451, 1455 (10th Cir.1984), *cert. denied*, 471 U.S. 1099, 105 S.Ct. 2322, 85 L.Ed.2d 840 (1985).

Next, the County argues it is not liable for the plaintiffs' or the Hospital's attorney fees because they are not expressly authorized by the agreement. The Kansas Supreme Court has stated that "[g]enerally, in Kansas, absent an applicable Supreme Court rule or express contractual or statutory authority to the contrary, parties bear the cost of their own attorney fees." *Leiker v. Gafford*, 249 Kan. 554, 561, 819 P.2d 655 (1991). This court does not interpret the Kansas Supreme Court's statement to mean the agreement or contract must expressly provide for the payment of attorney fees. *Leiker* involved an implied indemnity action by an employer against its employee. Here, the parties have an express contract, and therefore the issue is whether attorney fees are included in the reimbursement provision of ¶ 7. This court

finds attorney fees are recoverable by the Hospital pursuant to the parties' agreement.

The County further argues that the parties' agreement must be construed against the Hospital because the Hospital drafted it. John Reals, an attorney who has represented the Hospital since 1979, testified at his deposition that he prepared a draft of the agreement between the Hospital and the County. This agreement was first submitted to the hospital trustees and then to the board of county commissioners for their review. Reals stated, "What I got back was not my contract or the one that I had prepared, but one that was very similar in wording to mine but with some modifications and obviously retyped." (County's Response & Reply, Ex. D, Reals' Depo. at 15.)

■ In *Kinmonth v. Griffith*, 180 Kan. 389, 392, 304 P.2d 494 (1956), the court stated "that doubtful language in a contract is to be construed most strongly against the party preparing it or employing the words concerning which doubt arises." Here, however, this court finds no doubt or ambiguity exists. When a contract's language is clear and unambiguous, it does not require construction by the court even if the contract is drafted by one of the parties. *Thomas v. Thomas*, 250 Kan. 235, 244, 824 P.2d 971 (1992). Furthermore, it is clear from the testimony cited that Reals' original contract was modified, thereby indicating the parties negotiated the terms of the final draft. The contract at issue was not an adhesion contract. The parties had equal bargaining power, and thus there is no reason to employ the strict construction rule raised by the County.

The County also argues that the parties' actions in a prior suit established a pattern under the agreement between the Hospital and the County. In 1988, Marc Riffel, former director of the Southeast Dickinson County EMS, filed suit against the Hospital alleging improper termination. The Hospital settled that suit for $3,000.00, which the Hospital paid. The Hospital did not pass on the $3,000.00 expense to the County. (County's Response & Reply, Ex. A.) Based on this single incident, the County contends the Hospital, by its conduct, gave a practical construction to the agreement which should be

given "great weight in determining [the agreement's] proper interpretation." *Norton v. Agricultural Bond & Credit Corp.*, 92 F.2d 348, 351–52 (10th Cir.1937), *cert. denied*, 302 U.S. 763, 58 S.Ct. 409, 82 L.Ed. 592 (1938).

Again, the rule of construction stated in *Norton, supra*, is applicable when the contract at issue is ambiguous. If a contract is unambiguous, evidence of an operative interpretation by the parties is inadmissible. *Lawrence v. Cooper Independent Theatres*, 177 Kan. 125, 131, 276 P.2d 350 (1954). As stated above, this court finds the agreement between the County and the Hospital to be clear and unambiguous, and thus the Hospital's action surrounding the suit brought by Marc Riffel is not to be considered.

Finally, the County argues its claim of negligence against the Hospital precludes the Hospital's motion for summary judgment. The County maintains that the Hospital was warned by Riffel that he believed the Hospital was not properly compensating EMS employees for their on-call hours, and because the Hospital did not respond by changing the EMS employees' restrictions while on call, the Hospital acted negligently. The County's contention is purely speculative. There is no evidence that the Hospital was not properly compensating the EMS employees for on-call hours, nor is there evidence that the plaintiffs would not have filed this suit had the Hospital changed its on-call policy when Riffel expressed his opinion. The County's negligence claim is a misnomer; the County's claim against the Hospital is limited to an alleged breach of contract.

For the foregoing reasons, the court finds the expenses incurred by the Hospital in defense of plaintiffs' suit are expenditures within the meaning of ¶ 7, and therefore, the County is liable for those expenses. The Hospital is entitled to recover from the County its settlement costs as well as attorney fees. The County has not alleged that the attorney fees requested by the Hospital are unreasonable. The court will address the issue of whether the attorney fees are reasonable if necessary.

IT IS THEREFORE ORDERED this 2nd day of December, 1993, that Dickinson Coun-

ty's motion for summary judgment against the Hospital (Dkt. No. 74) is denied.

IT IS FURTHER ORDERED that Herington Municipal Hospital's motion for summary judgment against Dickinson County (Dkt. No. 79) is granted.