(974 P.2d 611)
No. 78,985

St. Paul Fire and Marine Insurance Company and Kansas Health Care Stabilization Fund, *Appellants,* v. Patricia B. Tyler, *Appellee.*

Opinion filed February 19, 1999.

*Arthur S. Chalmers*, of Kahrs, Nelson, Fanning, Hite & Kellogg, L.L.P., of Wichita, for the appellants.

*Michael J. Dutton* and *Arlen L. Tanner*, of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, for the appellee.

Before ROYSE, P.J., LEWIS, J., and THOMAS E. MALONE, District Judge, assigned.

LEWIS, J.: St. Paul Fire and Marine Insurance Company and the Kansas Health Care Stabilization Fund sued defendant Patricia B. Tyler on a theory of implied indemnity. For the purposes of this opinion, we shall refer to St. Paul Fire and Marine Insurance Company and the Kansas Health Care Stabilization Fund as "St. Paul." The trial court granted summary judgment in favor of Tyler, and St. Paul appeals.

This lawsuit is one which is bizarre in many respects. In order to understand the claims involved, it is necessary that we consider the facts of not only this action but of the one that preceded and prompted it.

Dr. A. P. Ramchandani is an M.D. and is engaged in the practice of medicine in Ulysses. He practices as an employee of his professional corporation, A. P. Ramchandani, P.A.

Patricia Tyler, R.N., was an employee of the professional corporation and a co-employee of Dr. Ramchandani.

In 1991, Arlene Ater, a patient of Dr. Ramchandani, went to the clinic for treatment. In the course of treating Ater, Tyler administered an intermuscular injection to Ater. Ater claimed that this injection was negligently administered and caused her sciatic nerve damage, along with considerable pain and suffering.

Ater filed a malpractice action against Dr. Ramchandani. St. Paul, as Dr. Ramchandani's liability carrier, defended the action.

Neither Dr. Ramchandani's professional corporation nor Tyler were joined as defendants in this action. We also point out that in addition to writing Dr. Ramchandani's personal liability coverage, St. Paul also wrote the liability coverage for Dr. Ramchandani's professional corporation.

The malpractice action was tried to a jury. The jury returned a verdict of $1,140,000 against Dr. Ramchandani and in favor of Ater. Ultimately, the parties agreed to settle the judgment for $900,000. The trial court then awarded Ater judgment against Dr. Ramchandani in the amount of $900,000, along with interest and costs. The judgment was paid in full by St. Paul.

The basis of the lawsuit against Dr. Ramchandani was respondeat superior. Dr. Ramchandani did not administer the injection which caused Ater's damage; Tyler did. However, if Tyler was an employee of Dr. Ramchandani, Dr. Ramchandani would have been held responsible for her negligence under the theory of respondeat superior.

For reasons that we do not understand, the professional corporation and Tyler were never made parties to the malpractice action. If they had been, we would not be dealing with the conundrum which has developed.

As indicated above, Tyler was not a party to the lawsuit, but she did appear as a witness. At one point, St. Paul invited Tyler, through her insurance company, to participate in Dr. Ramchandani's defense. This offer was declined by Tyler and her insurance carrier.

It develops that the malpractice action was tried on a flawed premise. The fact is, both Dr. Ramchandani and Tyler were employees of the professional corporation. Tyler was not an employee of Dr. Ramchandani; she was instead a co-employee of Dr. Ramchandani. Dr. Ramchandani, accordingly, was not responsible for the negligence of Tyler in administering the injection to Ater. We are not absolutely certain when these facts started to soak in, but it was apparently after the malpractice action had been tried, settled, and paid for.

In the malpractice action, counsel for Dr. Ramchandani, who was hired and retained by St. Paul, stipulated with Ater that "Pat

Tyler, R.N., was at all times relevant to this action an employee of Dr. Ramchandani, acting within the course and scope of such employment." While this stipulation was nicely worded, it was totally wrong. Tyler was not the employee of Dr. Ramchandani and was not acting within the scope of her employment by Dr. Ramchandani when the injection was given. It is of considerable significance that Tyler took no part in reaching the stipulation in question; she was not a party to the action, was not represented in the action, and did not word the stipulation. Tyler was a witness in that case and, in her deposition, she testified:

"Q.  For the record, your full legal name, please.
"A.  Patricia Bernice Tyler.

. . . .

"Q.  Okay. What's your current occupation?
"A.  I'm a registered nurse.
"Q.  And where do you work?
"A.  I work for Dr. Ramchandani in his office at 301 East Grant.
"Q.  If, throughout these proceedings, I would refer to him as Dr. Ram, would that be all right with you?
"A.  That would be fine.
"Q.  I have heard that used, and I am sensitive to mispronouncing names, so I won't take the risk.
"DR. RAMCHANDANI:    Don't worry about it.
"Q.  How long have you worked for Dr. Ram?
"A.  Originally, I went to work for Dr. Ram in January of 1984. I took a leave of absence of 11 months and I took care of my mother-in-law until she passed away, and I've worked for him ever since.
"Q.  Just when did you return? And I probably could figure that out, but I'm not smart enough.
"A.  I came back to work for him the 1st of March, '86."

### During the trial, Tyler testified:

"Q.  And are you employed by Dr. Ramchandani?
"A.  Yes, sir.
"Q.  And when were you first employed by Dr. Ramchandani?
"A.  January of 1984.
"Q.  And you continued in his employ as a registered nurse ever since that time?
"A.  I took a leave of absence eleven months and went to Texas and then took care of my mother-in-law until she passed away.
"Q.  And when was that?

"A. That would have been in the first part of April of '85, I believe, until the following year, or first part of March of—86, I believe. I am not exactly sure of the dates, but it was at that approximate time.
"Q. In 1989 were you working in Dr. Ramchandani's office?
"A. Yes, sir."

None of the confusion about who worked for whom would become of any real importance until this action was filed. In this action, St. Paul insists that as the liability carrier for Dr. Ramchandani, it was compelled to pay a judgment rendered against him as a result of the negligence of Tyler. Thus, it claims to have an implied right of indemnity against Tyler and her unnamed liability insurance carrier. The defense to all of this is that as a co-employee, Dr. Ramchandani was not responsible for Tyler's negligence and St. Paul was not compelled to pay a liability that Dr. Ramchandani did not have. If there was respondeat superior liability for Tyler's negligence, it would lie with Tyler's employer, the professional corporation, which was never a party to the malpractice lawsuit.

It is now agreed that despite the malpractice case, Tyler was never employed by Dr. Ramchandani and Dr. Ramchandani is not now and never was responsible for Tyler's negligence.

The question is whether St. Paul is entitled to implied indemnity under these facts.

The trial court granted summary judgment in favor of Tyler, reasoning:

"It has now become clear in the facts that at the time the injury to Mrs. Ater was inflicted, the Defendant herein was an employee of a corporation known as A.P. Ramchandani, PA, a Professional Corporation, and that corporation was provided with a policy of professional liability insurance by the Plaintiff, St. Paul Fire and Marine Insurance Company, but upon the suit and the judgment in favor of Ater, this policy was not used to defend the Ater claim, nor pay judgment to Ater in the prior proceeding entitled *Ater v. A.P. Ramchandani, M.D.*, in the Grant County District Court.

"Now both parties hereto have made their renewed motions for summary judgment, and it is the order of the Court as follows:

"The Plaintiffs herein claim that they have subrogation to the indemnity rights of A.P. Ramchandani, M.D.

"That is both true and correct, but of no avail to the Plaintiffs. The Plaintiffs herein paid a judgment on behalf of A.P. Ramchandani, M.D., and they obtained subrogation rights, if any he may have, against Patricia B. Tyler.

"Indemnity comes from contract express or implied. See *Bituminous Corporation v. American Fire*, 192 Kan. 233.

. . . .

"Because there was no employee-employer relationship, there could not have been a vicarious liability between Tyler, the employee, and Ramchandani, the employer. *Leiker v. Gafford*, 245 Kan. 325.

"The Plaintiffs claim that equity should prevail and give them a right of indemnity against Tyler because they paid the judgment rendered against A.P. Ramchandani in favor of Ater.

"The facts speak for themselves in this case. St. Paul is not entitled to equity. They issued two insurance policies, one to A.P. Ramchandani, M.D., and one to A.P. Ramchandani, PA, a Professional Corporation. Upon the claim being made against Ramchandani by Ater, they never asserted the fact that Tyler was not an employee of Ramchandani, M.D. In fact, they agreed that she was an employee of Ramchandani, M.D. And although the Plaintiffs, who now stand in the shoes of Ramchandani, complain that Tyler should be held liable by indemnity because of her failure to assert the relationship, that is not persuasive to this Court.

"The simple fact of the matter is, Ramchandani, M.D., did not assert the lack of employer-employee relationship, and it was his to have asserted. The Plaintiffs here claim that Tyler should be estopped from denying her liability because she did not assert that she was not an employee of Ramchandani in the *Ater* suit.

"Just because the Plaintiffs herein had put this Defendant on notice of the impending suit, and just because they, throughout the proceeding, asserted a right of indemnity and claim against Tyler, that fact is meaningless. Equitable estoppel cannot be invoked by the Plaintiffs here because it cannot be invoked by someone in favor of their own wrongful act or dereliction. *Newton v. Hornblower*, 224 Kan. 506.

"They have no equitable right to claim indemnity. They are estopped from claiming indemnity because of their own failure to act through Ramchandani.

"It is, therefore, by the Court ordered, adjudged and decreed that judgment shall be and is hereby rendered in favor of the Defendant and against the Plaintiffs herein because there are no material facts in dispute by either party."

We review the trial court's decision on the basis of our well-known standard of review for summary judgment cases. See *Saliba v. Union Pacific R.R. Co.*, 264 Kan. 128, 131-32, 955 P.2d 1189 (1998).

St. Paul sought to recover implied indemnity from the insurance company which insured Tyler against claims for her malpractice.

In Kansas, claims of indemnity are allowed when a contract of indemnity is implied. The claim usually arises when one party without fault is compelled to pay for the tortious acts of another. The

indemnitee has a right of action against the indemnitor. *Bick v. Peat Marwick & Main*, 14 Kan. App. 2d 699, 708, 799 P.2d 94, *rev. denied* 247 Kan. 703 (1990); see *Leiker v. Gafford*, 249 Kan. 554, 558, 819 P.2d 655 (1991).

"There are two kinds of subrogation, one of which is termed 'conventional,' and the other 'legal' (also referred to as 'equitable'). The distinction between the two is that conventional subrogation arises from contract; whereas, legal or equitable subrogation does not depend on the agreement of the parties and is a creature of equity." *Hartford Fire Ins. Co. v. Western Fire Ins. Co.*, 226 Kan. 197, Syl. ¶ 3, 597 P.2d 622 (1979).

"Vicarious liability is a term generally applied to legal liability which arises solely because of a relationship and not because of any actual act of negligence by the person held vicariously liable for the act of another. It is also referred to as imputed negligence or imputed liability. Vicarious liability depends upon the relationship of the parties, such as employer and employee or principal and agent. In such cases, the employer or principal is held liable for the negligent act of the employee or agent solely by reason of the relationship and not because the employer or principal actually committed an act of negligence. For discussions of the distinction between vicarious liability and the independent liability of an employer or principal see Prosser and Keeton on Torts, ch. 12, §§ 69-71 (5th ed. 1984); 53 Am. Jur. 2d, Master and Servant § 404 *et seq*." *Leiker v. Gafford*, 245 Kan. 325, 355-56, 778 P.2d 823 (1989).

The facts demonstrate that St. Paul is not entitled to implied indemnity. As is pointed out above, implied indemnity is used in cases involving an employer/employee relationship or principal/agent relationship. The concept behind the doctrine of implied indemnity is that the party whose actual negligence caused the damages should be required to pay back any sums the passively negligent party's insurance company has had to pay. For instance, if an employer is forced to pay a judgment based upon his or her employee's negligence, the employer has a cause of action against the employee for implied indemnity. Under those circumstances the employer was only passively negligent, whereas the negligence of the employee was the active negligence which caused the damage.

"In Kansas, claims of indemnity are allowed when a contract of indemnity is implied. The claim usually arises when one party without fault is compelled to pay for the tortious acts of another. The indemnitee has a right of action against the indemnitor. [Citation omitted.]   . . .   The doctrine of implied indemnity

is particularly applicable in cases of liability of a principal in respondeat superior for the acts of an agent or employee. [Citation omitted.]" *Bick v. Peat Marwick & Main*, 14 Kan. App. 2d at 708-09.

In *Leiker v. Gafford*, 249 Kan. at 559, the court defined indemnity as " 'a right which inures to a person who *has fulfilled an obligation owed by him* but which as between himself and another person should have been discharged by the other.' " (Quoting *Missouri Pacific Railroad Co. v. City of Topeka*, 213 Kan. 658, 662, 518 P.2d 372 [1974].)

St. Paul's failure to ascertain who worked for whom in the malpractice suit has placed it in a position where it may not utilize implied indemnity. For instance, Dr. Ramchandani was not compelled to pay the judgment entered as a result of Tyler's negligence. It is true that St. Paul paid that judgment, but it was not compelled to do so, and neither was Dr. Ramchandani compelled to do so, because he had no liability.

We know now that Tyler did not work for Dr. Ramchandani. She worked for his professional corporation. Since Dr. Ramchandani's liability was premised on respondeat superior, it begins to melt away with the revelation that he is a co-employee of Tyler and not her employer. The result is that Dr. Ramchandani was not "compelled to pay" for Tyler's negligence and did not "fulfill an obligation owed by him in so paying." Only the professional corporation could have been compelled to pay for Tyler's negligence, and it was not a party to the lawsuit.

It might appear on first glance that the equities in this case lie with St. Paul. If that is true, many of those equities are nullified by St. Paul's unaccountable failure to join Tyler and Dr. Ramchandani's professional corporation as defendants in the malpractice action. In addition, St. Paul failed to determine that both Dr. Ramchandani and Tyler were employees of the professional corporation. That true employment relationship was there for the finding, but apparently St. Paul did not look very hard.

We hold the elements of implied indemnity were not present and affirm the trial court's decision to that effect.

St. Paul attempts to avoid the factual dilemma it is in through the use of collateral estoppel. Collateral estoppel may be invoked where there is

"(1) a prior judgment on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate facts as disclosed by the pleadings and judgment; (2) the parties must be the same or in privity; and (3) the issue litigated must have been determined and necessary to support the judgment. [Citation omitted.]" *In re Estate of Beason*, 248 Kan. 803, 813, 811 P.2d 848 (1991).

The concept of collateral estoppel is similar to that of res judicata. The doctrine will bar relitigation of issues on which the parties are bound by a prior judgment.

"Although collateral estoppel is not as broad in scope as the doctrine of *res judicata*, the necessary elements which make the two doctrines applicable are much the same. Without reviewing all of the necessary elements it will suffice for the purpose of this opinion to state that there must be a judgment on the merits which determines the rights and liabilities of the parties based on the ultimate facts as disclosed by the pleadings or issues presented for trial [citations omitted], and *neither doctrine operates to affect those who were neither parties nor in privity therein.*" (Emphasis added.) *Penachio v. Walker*, 207 Kan. 54, 57, 483 P.2d 1119 (1971).

St. Paul asserts collateral estoppel to support its argument that Tyler should be bound by the stipulation in the malpractice action that she was employed by Dr. Ramchandani. The problem with that argument is that through no fault or machination of her own, Tyler was not a party to the malpractice suit. It was within the power of St. Paul to make her a party, but it failed to do so. It was St. Paul which entered into the stipulation with Ater, not Tyler, who had very little, if anything, to say about the wording of the stipulation.

In *In re Estate of Beason*, 248 Kan. at 812, the Supreme Court said:

"The trial court is wrong in its facts. The nieces and nephews could not have themselves been parties to the determination since the trial court had previously dismissed them. *One who is dismissed from a suit is not bound by a judgment in that suit. Mid-Continent Casualty Company v. Everett*, 340 F.2d 65, 69 (10th Cir. 1965)." (Emphasis added.)

In light of the reasoning set forth in *Beason*, we do not hesitate to conclude that one who has never been a party to a lawsuit is not bound by collateral estoppel or res judicata to the judgment in that

lawsuit. Neither is Tyler bound by a stipulation negotiated between St. Paul and Ater in her absence.

St. Paul asserts, however, that Dr. Ramchandani and Tyler were in privity and that collateral estoppel applies for that reason.

We have read a number of cases attempting to define privity and can only conclude that the definition of privity is one of the more difficult to state and is perhaps one that has never been satisfactorily set forth.

Despite that difficulty, there are a number of definitions of privity:

"There is no generally prevailing definition of 'privity' which can be automatically applied to all cases. A determination of the question as to who are privies requires careful examination into the circumstances of each case as it arises." *Goetz v. Board of Trustees*, 203 Kan. 340, 350-51, 454 P.2d 481 (1969).

"A privy is: '[O]ne who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession or purchase.' " *Wells v. Davis*, 226 Kan. 586, 589, 603 P.2d 180 (1979) (quoting *Bernhard v. Bank of America*, 19 Cal. 2d 807, 811, 122 P.2d 892 [1942]).

In 47 Am. Jur. 2d, Judgments § 663, we find:

"Privity is not established however, from the mere fact that persons happen to be interested in the same question or in proving or disproving the same state of facts, or because the question litigated was one which might affect such other person's liability as a judicial precedent in a subsequent action. . . .

"It has been declared that if the interests of two groups of persons were in conflict at the time of the first action, they are not privies for the purposes of res judicata or collateral estoppel. There can be no such privity between persons unless the result can be defended on principles of fundamental fairness in the due process sense."

The fact is, Tyler was not a party in the malpractice suit and was not represented in the malpractice suit. To hold that she is bound by the judgment of the malpractice action seems to us to deny her fundamental due process and fairness. The definition of privity in the context with which we deal is very difficult if not impossible to state. However, privity is an equitable concept and equitable prin-

ciples should apply. We conclude there can be no privity between persons unless the result can be defended on principles of fundamental fairness in a due process sense. That element cannot be satisfied in this case.

Tyler and Dr. Ramchandani were co-employees of Dr. Ramchandani's professional corporation. Dr. Ramchandani was sued for Tyler's negligence, and Tyler was left out of the lawsuit. The stipulation which St. Paul wishes to hang around Tyler's neck was prepared and signed not by Tyler but by St. Paul and Ater. Despite St. Paul's arguments to the contrary, we fail to see any fundamental fairness in holding Tyler to the details of a judgment in an action to which she was a stranger and in a situation in which she was not in privity with Dr. Ramchandani.

We hold that Dr. Ramchandani and Tyler were not in privity with each other so as to make the malpractice action binding upon Tyler, a nonparty.

In the appellee brief, Tyler makes an argument based on the statute of limitations. We conclude that based upon our decision as set forth in this opinion, the statute of limitations argument is moot and will not be addressed.

Tyler spends a fair amount of time in her brief arguing that St. Paul cannot successfully argue equitable estoppel. In the reply brief, St. Paul indicates it is not making an equitable estoppel argument. As a result, we do not reach that question.

Affirmed.