NOT DESIGNATED FOR PUBLICATION

No. 102,281

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

NATIONAL INSPECTION & REPAIR, INC.,
*Appellant*,

v.

SCOTT FARAH,
*Appellee*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; LARRY D. HENDRICKS, judge. Opinion filed July 1, 2016. Affirmed.

*Dan E. Turner* and *Phillip L. Turner*, of Topeka, for appellant.

*Douglas C. McKenna* and *Scott M. Brinkman*, of Lewis, Rice & Fingersh, L.C., of Kansas City, Missouri, for appellee.

Before ARNOLD-BURGER, P.J., SCHROEDER, J., and JEFFREY E. GOERING, District Judge, assigned.

*Per Curiam*: On appeal, National Inspection & Repair, Inc. (NIR) alleges the district court lacked jurisdiction to reverse its grant of default judgment against Scott Farah; abused its discretion by not granting NIR's renewed motion for default judgment; abused its discretion by assessing attorney fees against NIR's attorney for discovery sanctions; and abused its discretion in granting Farah's motion for summary judgment on NIR's claims. We disagree with NIR's claims and affirm the district court.

1

FACTS

This case involves a failed business loan transaction that originated more than 15 years ago. The case arrives before this court for review of summary judgment entered in favor of Farah. That judgment came after protracted litigation in New Hampshire ended the other lawsuit over the loan in Financial Resources, Inc. (FRI) and Farah's favor. This case has suffered contentious discovery disputes, Farah's bankruptcy, and multiple motions for failure to comply with discovery requests. A short overview of the case history will provide context for the issues.

*The Loan*

In 2000, David Price, as president of NIR, sought commercial financing from FRI. On November 8, 2000, Farah, as president of FRI, sent Price a letter indicating that NIR had been approved for a three-phase loan totaling $3.5 million. At some point, NIR received at least $300,000 in loan proceeds from FRI.

*The New Hampshire Lawsuit*

In August 2002, Financial Resources and Assistance of the Lakes Region, Inc., (Financial Resources), a New Hampshire corporation, sued NIR and Price in a New Hampshire Superior Court, alleging NIR and Price issued several worthless checks as purported loan payments and failed to repay loans financed by Financial Resources. Farah signed papers initiating that lawsuit as president of Financial Resources.

One year later, NIR and Price filed several counterclaims against Financial Resources in the New Hampshire lawsuit. Specifically, NIR and Price alleged that Financial Resources, acting through its agents or affiliates, FRI, Ronald Provart, and Farah, committed fraud, negligent misrepresentation, and a breach of contract by

agreeing to loan NIR $3.5 million, issuing a worthless check for $1 million, and inducing NIR to make commission payments to FRI and pay off other debts with checks drawn against that $1 million check.

Ultimately, a New Hampshire jury rejected NIR and Price's counterclaims and returned a $300,000 verdict for Financial Resources. The jury verdict was affirmed on appeal.

*The Kansas Lawsuit*

The litigation now before this court began on September 18, 2003—before the New Hampshire case went to trial—when NIR filed a lawsuit in the Shawnee County District Court, against Farah, as an individual, for breach of contract, fraud, and misrepresentation. NIR alleged that Farah advised NIR that it had been approved for commercial loans totaling $3.5 million, that Farah knew FRI's agent, Provart, had issued a worthless $1 million check as a purported first installment of the $3.5 million loan, and Farah induced NIR to write checks against the $1 million check to pay FRI's commissions and other debts owed by NIR.

The first 3 years of litigation in Kansas largely consisted of NIR's attempts to obtain discovery from Farah, which are discussed in more detail below, and Farah's attempts to have the case dismissed based on the ongoing New Hampshire action.

The district court ultimately granted NIR's motion for default judgment and imposed monetary sanctions against Farah for discovery violations. Upon reconsideration, the district court affirmed the default judgment but rescinded its decision to impose monetary sanctions upon finding the default judgment a sufficient sanction.

3

Farah appealed the default judgment to this court before the district court decided the damages component of NIR's claim. This court granted NIR's motion to dismiss that interlocutory appeal and remanded the case to the district court.

Upon remand, the district court reversed the default judgment against Farah and reopened all discovery so the case could proceed to a trial on the merits. In support of its judgment to set aside the default judgment, the district court found the default judgment too "harsh" a sanction in light of the almost $48 million in damages sought by NIR and called on Farah to "heed[ ] the earlier and current warnings from the Court to fully, and in good faith and effort, comply with the discovery process."

Farah subsequently moved for summary judgment. In support, Farah argued NIR's claims for damages were procedurally barred because: (1) the issues in this case are factually and legally identical to NIR's counterclaims in the New Hampshire action; (2) a New Hampshire jury rejected those counterclaims and found NIR was not entitled to any damages; and (3) that jury verdict became a final judgment when it was affirmed on appeal. The next 3 years of litigation largely consisted of NIR's attempts to obtain reconsideration of the reversal of the default judgment and more discovery disputes.

Ultimately, the district court assessed monetary sanctions against NIR and NIR's counsel for discovery violations and granted Farah's motion for summary judgment finding NIR's claim was barred by the doctrine of collateral estoppel. NIR appeals.

*Farah's Bankruptcy*

In March 2010, shortly before the fully briefed appeal was originally scheduled for oral argument before this court, Farah moved to stay the appeal because of his involvement in bankruptcy proceedings in New Hampshire. See 11 U.S.C. § 362 (2006)

4

(automatic stay provision of Bankruptcy Code). This court granted the stay, and Farah filed monthly status reports over the next several years.

Six years later, this court lifted the stay upon notice that the automatic stay had been lifted in Farah's personal bankruptcy action. NIR waived oral argument given Farah's indication in that notice that his personal assets are now valued at less than $15,000 after the bankruptcy. Neither party supplemented their respective briefs filed in 2009.

ANALYSIS

*Did the district court lack jurisdiction to set aside the default judgment against Farah?*

NIR first contends the district court lacked jurisdiction to reconsider and reverse its September 30, 2005, default judgment against Farah because that judgment had become the law of the case. Farah disagrees, asserting the district court was free to reconsider the prior default judgment because that decision was not final and this court did not address its merits in dismissing Farah's first appeal as interlocutory.

*Standard of review*

NIR's challenge to the district court's jurisdiction to reconsider its order granting default judgment raises a question of law subject to de novo review. See *Frazier v. Goudschaal*, 296 Kan. 730, 743, 295 P.3d 542 (2013). Likewise, whether the law of the case doctrine applies to preclude the relitigation of an issue is a question of law subject to de novo appellate review. See *Kansas Baptist Convention v. Mesa Operating Ltd. Partnership*, 258 Kan. 226, 242, 898 P.2d 1131 (1995). As our Supreme Court has explained, the law of the case doctrine

5

""'is not an inexorable command, or a constitutional requirement, but is, rather, a *discretionary policy* which expresses the practice of the courts generally to refuse to reopen a matter already decided, *without limiting their power to do so*. This rule of practice promotes the finality and efficiency of the judicial process. The law of the case is applied to avoid indefinite relitigation of the same issue, to obtain consistent results in the same litigation, to afford one opportunity for argument and decision of the matter at issue, and *to assure the obedience of lower courts to the decisions of appellate courts*."' *State v. Collier*, 263 Kan. 629, 631, 952 P.2d 1326 (1998) (quoting 5 Am. Jur. 2d, Appellate Review § 605).

"The doctrine was first stated by the United States Supreme Court in *Himely v. Rose*, 9 U.S. (5 Cranch) 313, 3 L. Ed. 111 (1809) (court will not revisit *issues finally decided by it in previous appeal*), and *Skillern's Ex'rs v. May's Ex'rs*, 10 U.S. (6 Cranch) 267, 3 L. Ed. 220 (1810) (*once issues finally decided*, lower court has no choice but to follow mandate). Kansas adopted the doctrine in *Headley v. Challiss*, 15 Kan. 602, 605-06 (1875); and the cases stating the rule since are 'legion in number.' See *Collier*, 263 Kan. at 632." (Emphasis added.) *State v. Morton*, 283 Kan. 464, 472, 153 P.3d 532 (2007).

The doctrine does not prevent a district court from reconsidering, or even reversing, its own prior rulings before a final judgment is rendered in the case. See, *e.g.*, *McTaggart v. Liberty Mut. Ins.*, 267 Kan. 641, 645, 983 P.2d 853 (1999) ("a trial court retains control over its proceedings and has the power to correct errors or injustice until a final judgment is entered"); *Burrowwood Assocs., Inc. v. Safelite Glass Corp.*, 18 Kan. App. 2d 396, 398, 853 P.2d 1175 (1993) ("a trial judge may reverse himself or herself during the course of an action if he or she believes an incorrect ruling has been made").

In the case of an appeal and remand, the doctrine applies only where the appellate court finally decided the issue. See *Waddell v. Woods*, 160 Kan. 481, Syl. ¶ 3, 163 P.2d 348 (1945) (recognizing that in case of second trial or appeal, no reconsideration will be given to any questions addressed in first appeal). In other words, a district court may reconsider its rulings, even when a case has been appealed and remanded, as long as the

appellate court did not finally address those rulings. Compare *Morton*, 283 Kan. at 473 (district court granted defendant's motion in limine before first trial; defendant successfully appealed and was granted a new trial; on appeal from second trial, Supreme Court refused to apply the law of the case doctrine to find error in district court's reconsideration and reversal of the motion in limine at the new trial because issue was not addressed in first appeal) with *Collier*, 263 Kan. at 634-37 (under the "mandate rule," once an issue has been decided by an appellate court, the district court is not allowed to reconsider that issue upon remand).

Under the facts of this case: (1) The district court's original default judgment was not final since damages had not yet been determined; and (2) this court did not reach the merits of the default judgment in summarily dismissing Farah's interlocutory appeal. Accordingly, the district court had the jurisdiction to reevaluate the default judgment and did not abuse its discretion by setting it aside.

*No abuse of discretion to deny NIR's renewed motion for default judgment*

NIR next complains the district court should have granted its renewed default judgment as a discovery sanction because nothing had changed since the court granted the first default judgment, *i.e.*, Farah had not provided any additional discovery responses. Farah responds the district court was well within its discretion in denying the renewed motion, primarily because there was nothing to sanction since NIR had received all requested discovery.

*Standard of Review*

An appellate court reviews a district court's decision on a motion to impose sanctions for discovery violations for an abuse of discretion. *Hawkins v. Dennis*, 258 Kan. 329, 340-41, 905 P.2d 678 (1995). A judicial action constitutes an abuse of

discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013). As the party asserting an abuse of discretion, NIR bears the burden of proof. 296 Kan. at 935.

*Analysis*

A default judgment is one of several sanctions a district court may impose for a party's failure to obey an order to provide or permit discovery. See K.S.A. 2015 Supp. 60-237(b)(2)(A)(vi). As our Supreme Court has cautioned, however, a district court must carefully exercise its sanctioning discretion and should apply the "ultimate sanction" of default judgment "only . . . in the most extreme cases." *Wenger v. Wenger*, 239 Kan. 56, 60, 716 P.2d 550 (1986).

Factors that can inform a court's decision on a motion for a default judgment as a discovery sanction include: (1) whether the discovery sought was relevant to a dispositive issue in the case; (2) whether alternative sanctions were available and sufficient to protect the party seeking discovery; (3) whether the discovery sought was merely cumulative or corroborative; and (4) whether the party against whom sanctions were sought presented evidence of excusable neglect or good faith when provided the opportunity to explain the failure to comply. *Canaan v. Bartee*, 272 Kan. 720, 727, 35 P.3d 841 (2001) (citing *Hawkins*, 258 Kan. at 341).

A detailed review of the discovery disputes might be helpful, but we deem it unnecessary given the parties' own inexhaustible knowledge of what has been presented to the district court.

8

In August 2004, NIR filed its first of many motions to compel Farah's discovery responses. Over the next year, two different presiding judges ordered Farah to respond to NIR's discovery or face sanctions. By late September 2005, the district court found the case had "been stuck in a quagmire for too long" due to Farah's repeated failures to engage in discovery in good faith and entered a default judgment against Farah as a sanction for those failures. As noted above, this court dismissed Farah's interlocutory appeal from that judgment.

Upon remand, the district court reconsidered and reversed that default judgment in light of the $48 million in damages NIR sought and reopened all discovery, allowing the case to proceed to a trial on the merits. Each party thereafter accused the other of noncompliance with discovery and sought further sanctions from the district court. In June 2007, another judge was assigned the case and conducted a joint hearing on the dueling discovery-sanction motions and took the matter under advisement. The transcript of that hearing is not a part of our record.

On March 14, 2008, Judge Hendricks entered judgment granting Farah's motion to compel, sanctioning NIR, and denying NIR's renewed motion for default judgment. In support, the court found in its order of September 26, 2006, the parties had 60 days to submit expert reports and an additional 60 days to complete discovery; NIR failed to timely respond to Farah's discovery requests and the court denied NIR's motion for an extension of time to do so; there were no court orders staying NIR's obligation to respond to Farah's discovery requests; and NIR "openly subverted" a court order to comply with Farah's discovery requests. Thus, on March 14, 2008, the district court ordered NIR to respond to Farah's written discovery requests within 14 days and to pay Farah's reasonable expenses incurred in filing the motion to compel, including attorney fees. The district court made no factual findings in denying NIR's motion for default judgment, instead stating simply: "Due to the ruling as indicated above the Plaintiff's Motion for Default Judgment is denied." The district court subsequently denied NIR's motion to

9

reconsider that decision or make additional factual findings and again refused NIR's request to file an interlocutory appeal from these decisions.

NIR now broadly proclaims the district court abused its discretion in denying its renewed motion for default judgment because nothing had changed since the first default judgment as far as Farah's noncompliance with discovery. However, NIR has failed to develop its argument, cites no authority in support of its argument, and has not provided an adequate record from which this court can meaningfully review the district court's consideration of the above factors in denying NIR's renewed motion for a default judgment as a discovery sanction.

For example, in both its motions to compel below and its appellate brief, NIR generally alleges Farah never properly responded to any discovery requests and failed to comply with "underlying orders compelling" discovery responses. NIR did not specify in its brief what discovery it sought or which order(s) Farah allegedly failed to obey. Thus, this court cannot adequately review whether the discovery was relevant to a dispositive issue in the case or whether it was merely cumulative or corroborative. Moreover, NIR failed to provide a copy of the transcript of the hearing at which the parties presented their opposing sides on the issue of discovery compliance. Thus, this court is without the means to adequately review whether the district court found Farah had actually complied with the discovery requests or presented evidence of good-faith basis for failing to do so.

As the appellant, NIR has the burden to designate a record sufficient to establish its claim the district court abused its discretion in not granting default judgment as a sanction for Farah's discovery abuses. Without that record, this claim of error fails. See *Harsch v. Miller*, 288 Kan. 280, 293, 200 P.3d 467 (2009) (party asserting abuse of discretion bears burden to establish such abuse); *Kelly v. VinZant*, 287 Kan. 509, 526, 197 P.3d 803 (2008) ("An appellant has the burden to designate a record sufficient to establish the claimed error; without such a record, the claim of error fails.").

10

NIR also has the burden to explain why the district court's ruling was an abuse of discretion and to either support that argument with pertinent authority or to show why the argument is sound despite a lack of supporting authority or in the face of contrary authority. Such failures are akin to failing to brief the issue, meaning the issue is deemed waived and abandoned. See *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013).

NIR has not pointed to any error of fact or law underlying the district court's order of March 14, 2008, and we cannot say the decision was arbitrary, fanciful, or unreasonable. Accordingly, we find NIR has failed to meet its burden to show the district court abused its discretion in denying NIR's renewed motion for default judgment.

*No abuse of discretion to sanction NIR's counsel for discovery abuses*

NIR next contends the district court abused its discretion when it imposed monetary sanctions against NIR (Farah's attorney fees) for discovery violations and then ordered NIR's counsel to pay the sanction. Farah responds K.S.A. 60-211 is inapplicable; and, regardless, the district court did not abuse its discretion by sanctioning NIR for unjustifiably refusing to comply with discovery orders.

*Standard of Review*

Our standard of review of this issue is the same:  This court must determine whether the district court abused its discretion in imposing the discovery sanction. *Hawkins*, 258 Kan. at 340-41.

11

*Analysis*

K.S.A. 60-237(a) governed Farah's motion to compel discovery and the sanctions at issue here:

"If the motion is granted, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response or objection was substantially justified or that other circumstances make an award of expenses unjust." K.S.A. 60-237(a)(4)(B).

Where a party fails to comply with a discovery order entered under subsection (a), the statute permits the court to enter certain orders relating to the information withheld and further directs:

"In lieu of any of [those permissible] orders or in addition thereto, the judge shall require the party failing to obey the order *or the attorney advising such party* or both to pay the reasonable expenses, including attorney fees, caused by the failure, unless the judge finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." (Emphasis added.) K.S.A. 60-237(b)(2)(E).

This issue arises from the district court order of March 14, 2008, granting Farah's motions to compel discovery and ordering NIR to pay reasonable expenses, including attorney fees, incurred by Farah as a sanction. Farah's counsel subsequently sought and received orders that he be reimbursed for expenses and attorney fees totaling $1,147.50. On appeal, NIR suggests its counsel was ordered to pay all of this amount. However, it appears from our review of the record, when NIR opted not to request a hearing on the issue of the propriety of the sanctions—which the court had held in abeyance to allow for

12

such a request—that the court ordered NIR's counsel to pay $127.50 of the total sanctions. The $127.50 apparently represents the time Farah's counsel spent preparing the request for the court to enter an order on the costs and fees after no hearing was requested.

In its brief, NIR contends only that the district court erred as a matter of law in entering the sanctions. In support, NIR contends the court failed to comply with K.S.A. 60-211 and to consider the factors set forth in *Vondracek v. Mid-State Co-op, Inc.*, 32 Kan. App. 2d 98, 104, 79 P.3d 197 (2003), before it "strangely" and "without any basis or rational[e]" ordered NIR's counsel to pay the sanctions.

NIR is in error. As Farah points out, the authorities cited by NIR do not govern the district court's sanctions order entered under K.S.A. 60-237. See K.S.A. 60-211(d) ("Subsections [a] through [c] do not apply to disclosures and discovery requests, responses, objections and motions that are subject to the provisions of K.S.A. 60-226 through 60-237, and amendments thereto."); *Vondracek*, 32 Kan. App. 2d at 104 (identifying factors courts consider in determining whether to sanction a party and what kind of sanction to impose under K.S.A. 60-211).

NIR has failed to show the district court abused its discretion by assessing $127.50 in attorney fees against NIR's counsel as a discovery sanction.

*Was Farah entitled to summary judgment?*

Finally, NIR argues in the alternative that if the district court did not err in failing to enter default judgment against Farah, it erred in granting Farah summary judgment based upon the finding that FRI and Financial Resources were the same entity. In support, NIR argues, "[t]here is a dispute of material fact whether or not Scott Farah acting under the name of Financial Resources, Inc. was in fact Financial Resources and

13

Assistance of the Lake Region, Inc." Farah responds that summary judgment was proper given NIR's unsuccessful litigation of these same issues in the New Hampshire case.

*Standard of review*

When the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. The district court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, the same rules apply; summary judgment must be denied if reasonable minds could differ as to the conclusions drawn from the evidence. *Stanley Bank v. Parish*, 298 Kan. 755, 759, 317 P.3d 750 (2014).

The district court granted Farah's motion for summary judgment on collateral estoppel grounds. Whether the doctrine of collateral estoppel applies presents a question of law subject to unlimited review. *In re Care & Treatment of Sporn*, 289 Kan. 681, 686, 215 P.3d 615 (2009).

*Analysis*

The district court's summary judgment is grounded on application of the doctrine of collateral estoppel, also known as issue preclusion. That doctrine prevents relitigation in a different case of issues conclusively determined in a prior action. *Jackson Trak Group, Inc. v. Mid States Port Authority*, 242 Kan. 683, 690, 751 P.2d 122 (1988).

14

Generally, to invoke collateral estoppel: (1) there must have been a prior judgment on the merits arising from the same factual circumstances and determining the rights and liabilities of the parties; (2) the parties must be the same, or in privity; and (3) the issue litigated must have been determined and necessary to support the judgment. *In re Tax Appeal of City of Wichita*, 277 Kan. 487, 506, 86 P.3d 513 (2004); *Jackson Trak Group, Inc.*, 242 Kan. at 690.

Here, NIR's argument centers on the second element. More specifically, NIR repeatedly suggests that the record lacks support for the district court's finding that Financial Resources and FRI are "one and the same" or "identical" and that "nothing in the [New Hampshire] verdict pertains to [Farah]." Thus, NIR argues the New Hampshire lawsuit does not operate as a legal bar to the issues it raises in this lawsuit filed against Farah.

But NIR's argument wholly overlooks the district court's alternative finding that even if FRI and Financial Resources are not the same parties—an argument the court deemed "disingenuous"—at the very least, Farah was in privity with Financial Resources based on NIR's own allegations in the New Hampshire lawsuit. Notably, "the definition of privity is one of the more difficult to state and is perhaps one that has never been satisfactorily set forth." *St. Paul Fire & Marine Ins. Co. v. Tyler*, 26 Kan. App. 2d 9, 18, 974 P.2d 611 (1999). In fact, "'[t]here is no generally prevailing definition of "privity" which can be automatically applied to all cases. A determination of the question as to who are privies requires careful examination into the circumstances of each case as it arises.'" 26 Kan. App. 2d at 18 (quoting *Goetz v. Board of Trustees*, 203 Kan. 340, 350-51, 454 P.2d 481 [1969]). Our Supreme Court has defined a "privy" as: "'[O]ne who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession or purchase.' *Bernhard v. Bank of America*, 19 Cal. 2d 807, 811, 122 P.2d 892 (1942)." *Wells v. Davis*, 226 Kan. 586, 589, 603 P.2d 180 (1979).

15

As this court explained in *St. Paul Fire & Marine:*

> "In 47 Am. Jur. 2d, Judgments § 663, we find:
>
> "'Privity is not established however, from the mere fact that persons happen to be interested in the same question or in proving or disproving the same state of facts, or because the question litigated was one which might affect such other person's liability as a judicial precedent in a subsequent action. . . .
>
> "'It has been declared that if the interests of two groups of persons were in conflict at the time of the first action, they are not privies for the purposes of res judicata or collateral estoppel. There can be no such privity between persons unless the result can be defended on principles of fundamental fairness in the due process sense.'" 26 Kan. App. 2d at 18.

Not only has NIR failed to cite any authority in support of its argument attacking the court's conclusion that FRI and Financial Resources are the same—grounds alone for finding it waived or abandoned this issue (see *Friedman*, 296 Kan. at 645)—but NIR's failure to challenge the district court's alternative conclusion that Farah, FRI, and Financial Resources were at least in privity results in the issue being abandoned. See *State v. Novotny*, 297 Kan. 1174, Syl. ¶ 1, 307 P.3d 1278 (2013) ("When a district court provides alternative bases to support its ultimate ruling on an issue and an appellant fails to challenge the validity of each alternative basis on appeal, an appellate court may decline to address the appellant's challenge to the district court's ultimate ruling.")

Accordingly, we hold NIR has abandoned its challenge to the district court's summary judgment in favor of Farah. But, out of an abundance of caution, we conclude with the following thoughts:  NIR and Price had their day in the New Hampshire court on their alternative claims that FRI, Provart, and Farah, *as agents or affiliates of Financial Resources—i.e.*, they were in privity—committed fraud, negligent misrepresentation, and a breach of contract by agreeing to loan NIR $3.5 million, issuing a worthless check for $1 million, and inducing NIR to make commission payments to FRI and pay off other

16

debts with checks drawn against that $1 million check. Farah executed the petition in the New Hampshire action as president of Financial Resources. Farah's actions as an agent or affiliate of Financial Resources or FRI were at the very heart of NIR's claims in both cases. Also, the New Hampshire jury determined NIR was liable to Financial Resources for loans NIR maintained it obtained through transactions with FRI through FRI's president, Farah. That undisputed evidence supports the district court's finding "that the parties are identical or failing that, the requisite privity exists."

Accordingly, there are no genuine issues of material fact precluding summary judgment based on collateral estoppel. Farah was entitled to summary judgment, which the district court correctly ordered.

Affirmed.