NOT DESIGNATED FOR PUBLICATION

No. 116,987

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

RAY HODGE & ASSOCIATES, LLC,
and
RYAN HODGE,
*Appellants/Cross-appellees*,

v.

HOWARD CANNON,
*Appellee/Cross-appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; WILLIAM S. WOOLLEY, judge. Opinion filed December 15, 2017. Affirmed in part and reversed in part.

*Ryan E. Hodge*, of Ray Hodge & Associates, LLC, of Wichita, for appellants/cross-appellees.

*Timothy J. Finnerty* and *Penny A. Calhoun*, of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Wichita, for appellee/cross-appellant.

Before BRUNS, P.J., SCHROEDER, J., and HEBERT, S.J.

PER CURIAM: Ray Hodge & Associates, LLC and Ryan Hodge (Hodge) appeal the district court's determination the State of Kansas had no personal jurisdiction over Howard Cannon. Cannon cross-appeals claiming the district court erred when it denied his collateral estoppel defense based on Hodge's settlement of his claim with Restaurant Operations Institute, Inc. (ROI) through arbitration. We find Cannon has insufficient minimum contacts with Kansas to allow Kansas to obtain personal jurisdiction over him. As to the cross-appeal, we find the district court erred in finding Cannon's defense of

1

collateral estoppel did not apply since the issues between the parties were previously resolved in an arbitration proceeding between Hodge and ROI. Affirmed in part and reversed in part.

FACTS

In March 2014, Hodge contacted Cannon, the founder and owner of ROI, a company that provides consulting and expert witness services, about serving as an expert witness in a slip, trip, and fall case in Kansas. (ROI, also does business as Restaurant Expert Witness. Both entities will be referred to as ROI.)

While representing a client in a personal injury lawsuit, Hodge contacted ROI for its expert opinion on the case. Based on the information Hodge provided, Cannon, on behalf of ROI, represented Hodge had a strong case because the convenience store had deviated from industry standards. As a result, Hodge signed a services agreement and retainer with ROI. In December 2014, Cannon reiterated the convenience store clearly deviated from industry standards. Despite these earlier representations, Cannon's written report indicated it was impossible to tell whether the convenience store deviated from industry standards.

Pursuant to the service agreement, Hodge initiated arbitration against Cannon with the American Arbitration Association (AAA). Cannon objected to the AAA's jurisdiction because he was not a party to the agreement. Hodge agreed to remove Cannon and substitute ROI as a party since the contract was with ROI.

While arbitration was pending, Hodge filed a lawsuit in Kansas against Cannon in his personal capacity. Cannon, a resident of Alabama, filed a motion to dismiss due to a lack of personal jurisdiction. Alternatively, he requested a stay until arbitration was

2

complete. The hearing on the motion to dismiss was continued until November 4, 2016, to let arbitration conclude.

Hodge presented multiple claims to the arbitrator including a RICO, negligent misrepresentation, fraudulent inducement, and breach of contract claims. The arbitrator awarded Hodge $2,237.50 in damages for overbilling and charges related to ROI's expert report. After arbitration was final and Hodge accepted the benefits of the award, Cannon filed a supplemental memorandum in support of his motion to dismiss. In it, he alleged the arbitration proceeding resolved all of the issues between Hodge and ROI; therefore, collateral estoppel required the district court to dismiss the case.

After hearing arguments on the motions, the district court denied Cannon's collateral estoppel argument. However, it granted Cannon's motion to dismiss due to lack of personal jurisdiction. Hodge appealed. Cannon cross-appealed the district court's denial of his motion to dismiss based on collateral estoppel.

ANALYSIS

*Kansas Does Not Have Personal Jurisdiction Over Cannon*

"Whether jurisdiction exists is a question of law. *Mid-Continent Specialists, Inc. v. Capital Homes,* 279 Kan. 178, 185, 106 P.3d 483 (2005). The plaintiff bears the burden of establishing personal jurisdiction over the defendants. Where, as here, the issue of personal jurisdiction is decided pretrial on the basis of the pleadings, affidavits, and other written materials, any factual disputes must be resolved in the plaintiff's favor and the plaintiff need only make a prima facie showing of jurisdiction. An appellate court reviews a trial court's dismissal for lack of personal jurisdiction under a de novo standard. *Kluin v. American Suzuki Motor Corp.,* 274 Kan. 888, 893, 56 P.3d 829 (2002)." *Merriman v. Crompton Corp.*, 282 Kan. 433, 439, 146 P.3d 162 (2006).

3

Determining whether a Kansas court has personal jurisdiction over a nonresident defendant involves a two-step analysis. First, the court must decide whether there is jurisdiction under K.S.A. 2016 Supp. 60-308(b), the Kansas long-arm statute. K.S.A. 2016 Supp. 60-308(b) is to be "liberally construed to allow the exercise of jurisdiction to the outer limits allowed under due process." *Aeroflex Wichita, Inc. v. Filardo*, 294 Kan. 258, 273-74, 275 P.3d 869 (2012). If there is jurisdiction under the long-arm statute, the court must determine whether the exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. 294 Kan. at 274.

*We Apply the Kansas Long-Arm Statute*

K.S.A. 2016 Supp. 60-308(b)(1) states, in relevant part:

"Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the following acts, thereby submits the person and, if an individual, the individual's representative, to the jurisdiction of the courts of this state for any claim for relief arising from the act:

"(A) Transacting any business in this state;

"(B) committing a tortious act in this state;

. . . .

"(E) entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state;

. . . .

"(G) causing to persons or property in this state an injury arising out of an act or omission outside this state by the defendant if, at the time of the injury, either:

"(i) The defendant was engaged in solicitation or service activities in this state; or

. . . .

"(L) having contact with this state which would support jurisdiction consistent with the constitutions of the United States and of this state."

4

*Committing a Tortious Act in this State*

> "Under Kansas law, 'committing a tortious act in this state' is broadly construed under the long-arm statute to include tortious acts performed outside the state which cause injury in Kansas to a Kansas resident. It makes no difference whether the injury was physical or economic. [Citations omitted.]" *Midwest Mfg., Inc.*, 47 Kan. App. 2d at 225-26.

Furthermore, the tortious act is incomplete until the injury occurs. *Ling v. Jan's Liquors*, 237 Kan. 629, 632-33, 703 P.2d 731 (1985). As such, for purposes of K.S.A. 2016 Supp. 60-308(b)(1), the "'tortious act' is deemed to have occurred in the state where the injury occurs." *Ling*, 237 Kan. at 633. Here, Hodge alleged in its petition Cannon committed negligent misrepresentation—a tort. It also alleged it suffered monetary damages caused by its reliance on Cannon's information and that Hodge's principal place of business is Wichita. Based on these allegations, and resolving any factual disputes in Hodge's favor, Hodge made a prima facie showing of jurisdiction under the Kansas long-arm statute.

*Entering into an Express or Implied Contract with a Resident of this State*

Hodge makes three arguments related to this section of the long-arm statute. First, he argues he had an oral contract with Cannon. Next, he contends the written contract was actually with Cannon because personal service contracts cannot be assigned. Finally, he argues Cannon operates a sham corporation.

First, Hodge failed to raise the issue of an oral contract before the district court. In its reply brief, Hodge argues it raised the issue in oral argument to the district court. However, nothing in the transcript of the motion to dismiss hearing indicates the argument or existence an oral contract. Issues not raised before the trial court cannot be raised on appeal. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011). Hodge did not argue the existence of an oral contract before the district court; it

5

cannot argue the existence of an oral contract on appeal. This claim was not preserved for appeal.

Second, the written contract was with ROI. The contract identifies Ray Hodge & Associates, LLC, as the client and indicates Ryan Hodge signed the contract for Ray Hodge & Associates, LLC. Similarly, the contract indicates Howard Cannon signed the contract on behalf of ROI. Furthermore, Hodge concedes: "At first blush one could conclude that the written contract was not assigned by Howard Cannon to his corporation but that the corporation was the original party to the contract." However, Hodge argues, "because the services to be performed were of a personal nature, the very signing of the contract with the defendant's corporation was an assignment by the defendant to a third party." Hodge cites no authority suggesting that merely signing the contract constituted assignment of the contract. Failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue, and the issue is deemed waived or abandoned. *University of Kan. Hosp. Auth. v. Board of Comm'rs of Unified Gov't*, 301 Kan. 993, 1001, 348 P.3d 602 (2015).

Finally, in its reply brief, Hodge concedes "there is little evidence to support Plaintiffs' claim that ROI is the alter ego of Howard Cannon." Given we have found a prima facie showing of jurisdiction, we see no need to delve into Hodge's alter-ego claim.

*Due Process Analysis*

Even if jurisdiction is proper under K.S.A. 2016 Supp. 60-308(b), a court may not exercise jurisdiction over a nonresident defendant if it violates due process of law. In *Walden v. Fiore*, 571 U.S. ___, 134 S. Ct. 1115, 1121-23, 188 L. Ed. 2d 12 (2014), the United States Supreme Court explained:

6

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have '*certain minimum contacts . . .* such that the maintenance of the suit does not offend "*traditional notions of fair play and substantial justice.*"' *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S. Ct. 339, 85 L. Ed. 278 [1940])." (Emphasis added.)

*Minimum Contacts*

The minimum contacts analysis focuses on the relationship between a nonresident defendant, the forum, and the litigation. *Walden*, 134 S. Ct. at 1121. The relationship must result from contacts the defendant, not the plaintiff, has with the forum. More specifically, the analysis focuses on a nonresident defendant's contacts with the forum, not the defendant's contacts with residents of the forum. 134 S. Ct. at 1122.

"In considering whether the [defendant]'s minimum contacts meet this standard, courts should consider the quality and nature of the defendant's activity in determining whether it is reasonable and fair to require defense in the forum, rendering jurisdiction consistent with traditional notions of fair play and substantial justice. Due process requires a demonstration that the nonresident defendant purposely established minimum contacts with the forum state, thereby invoking the benefits and protections of its laws." *Merriman*, 282 Kan. 433, Syl. ¶ 15.

Hodge sued Cannon in his personal capacity. Accordingly, the question is whether *Cannon*, not ROI, had sufficient minimum contacts with Kansas. Hodge relies on numerous factors to suggest Cannon has minimum contacts with Kansas. First, it argues Cannon used a website to obtain business in Kansas; Cannon's curriculum vitae (CV) indicated he offered services to Kansas residents because he provided expert witness services around the globe; and Cannon agreed to review and testify in a Kansas case.

7

Hodge also contends Cannon's participation in, and occasional initiation of, conference calls with a Kansas attorney, as well as sending emails and bills to Kansas, establish minimum contacts with Kansas.

However, the record reflects many of the contacts Hodge identifies are not Cannon's contacts with Kansas; they are ROI's contacts with Kansas. For example, the website in question was copyrighted in 2016 by ROI. While it promotes Cannon's services, it is ROI's website, not Cannon's. Similarly, both invoices in the record are on company letterhead and request checks be made payable to ROI. Cannon's name does not appear anywhere on either invoice. Additionally, Cannon's opinion letter appears on company letterhead, not personal letterhead. Furthermore, Cannon's CV does not state *he* provides expert witness services around the globe; it states "*ROI* . . . is one of America's most highly-visible and highly recognizable . . . firms—providing . . . expert witness services to clients of all types and sizes and in markets across the country and around the globe." Moreover, Cannon's review of a Kansas case, his phone conferences, and possible appearance for a trial in Kansas, resulted from Hodge's contract with ROI. Finally, though the record contains seven pages of email communications, only one of those emails is from Cannon. Shirley Walters, ROI's director of administration, sent all the other emails on behalf of ROI

Assuming, for the sake of argument, Cannon's single email was not business related, it was his sole *personal* contact with the forum. In *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir. 1995), the Tenth Circuit held: "It is well-established that phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts." Emails are the letters of the 21st century. A single email in and of itself should be considered insufficient to establish minimum contacts with Kansas. Hodge failed to show Cannon had sufficient minimum contacts with Kansas. Thus, Kansas cannot exercise personal jurisdiction over Cannon.

*Cross-appeal*

Even though we have found Kansas has no personal jurisdiction over Cannon, out of an abundance of caution, we will proceed to address Cannon's cross-appeal in the event Cannon's individual contact with Kansas was sufficient to establish personal jurisdiction.

*Collateral Estoppel Applies*

In his cross-appeal, Cannon argues the district court erred when it denied his motion to dismiss based on collateral estoppel. He contends Hodge is collaterally estopped from bringing its claims against Cannon because the arbitration award was a final judgment on the merits. Whether the doctrine of collateral estoppel (issue preclusion) applies is a question of law subject to de novo review. *In re Tax Appeal of Fleet*, 293 Kan. 768, 777, 272 P.3d 583 (2012); *Venters v. Sellers*, 293 Kan. 87, 93, 261 P.3d 538 (2011).

Collateral estoppel requires:  (1) a prior judgment on the merits arising from the same factual circumstances and determining the rights and liabilities of the parties, (2) the parties must be the same, or in privity, and (3) the issue litigated must have been determined and necessary to support the judgment. *In re Tax Appeal of Fleet*, 293 Kan. 768, 778, 272 P.3d 583 (2012). Here, Hodge concedes the arbitration award was a final judgment and paid. Further, all of the issues Hodge raised in its petition were litigated and resolved in the arbitration proceedings. Accordingly, the only real issue is whether the parties to the current litigation and the previous arbitration were the same or were in privity.

Cannon contends he was in privity with ROI, and as a result, the arbitration award against ROI collaterally estopped Hodge from pursuing him individually. Hodge argues

9

Cannon is not in privity with ROI because Cannon objected to the arbitrator's jurisdiction over him and sought an order dismissing himself from the arbitration.

> "'There is no generally prevailing definition of "privity" which can be automatically applied to all cases. A determination of the question as to who are privies requires careful examination into the circumstances of each case as it arises.' *Goetz v. Board of Trustees*, 203 Kan. 340, 350-51, 454 P.2d 481 (1969). As with the doctrine to which it is a part, privity is an equitable determination grounded in principles of fundamental fairness and sound public policy. See *Huelsman v. Kansas Dept. of Revenue*, 267 Kan. 456, 458, 980 P.2d 1022 (1999) ('Whether a party is in privity with another . . . is a policy decision.'); *St. Paul Fire & Marine Ins. Co. v. Tyler*, 26 Kan. App. 2d 9, 18-19, 974 P.2d 611 (1999) ('[P]rivity is an equitable concept and equitable principles should apply. We conclude there can be no privity between persons unless the result can be defended on principles of fundamental fairness in a due process sense.')." *Cain v. Jacox*, 302 Kan. 431, 437, 354 P.3d 1196 (2015).

In *Midwest Crane and Rigging, LLC v. Schneider*, No. 113,725, 2016 WL 1391805, at *7 (Kan. App. 2016) (unpublished opinion), the panel held employees who "were agents acting in furtherance of Emcon's interests at the time they signed the rental agreement with Midwest, . . . are considered to be in privity with Emcon for the purposes of res judicata analysis in this case." Here, Cannon reviewed documents consistent with ROI's contract with Hodge. He made phone calls and drafted an expert's report as a result of ROI's contract with Hodge. Cannon was acting in furtherance of ROI's contractual obligation at the time the alleged injuries occurred. As such, he was an employee/owner of ROI and in privity with ROI. Collateral estoppel applies. Hodge even acknowledges: "The doctrine of collateral estoppel would clearly be applicable if the Defendant did not object to the arbitration and seek an order that he be dismissed from arbitration."

Hodge contends Cannon's objection to the arbitration, and his ultimate dismissal from arbitration, effectively broke Cannon's privity with ROI—a point we disagree with. Hodge contends: "Case law on this topic generally holds that an employee is subject to

10

an arbitration provision unless specifically agreed to otherwise by the interested parties." Here, Hodge cites no authority for the proposition that Cannon's objection to the arbitration proceeding's jurisdiction over him individually somehow destroyed privity with ROI. Failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue, and the issue will be deemed waived or abandoned. *University of Kan. Hosp. Auth.*, 301 Kan. at 1001. Thus, collateral estoppel can be raised by Cannon unless judicial estoppel presents a bar.

Hodge also argues judicial estoppel prevents Cannon from raising collateral estoppel based on the prior arbitration proceeding. Judicial estoppel precludes a party from taking a position that induces the court to act in a certain way and subsequently taking a contrary position in related litigation. *New Hampshire v. Maine*, 532 U.S. 742, 749-51, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001).

> "'[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." 532 U.S. at 749 (quoting *Davis v. Wakelee*, 156 U.S. 680, 689, 15 S. Ct. 555, 39 L. Ed. 578 [1895]).

The *New Hampshire* Court identified three factors to consider when determining whether to apply the doctrine of judicial estoppel:

> "First, a party's later position must be 'clearly inconsistent' with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled[.], . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on

11

the opposing party if not estopped. [Citations omitted.]" *New Hampshire*, 532 U.S. at 750-51.

Cannon asserts the arbitrator had no jurisdiction over him *individually* because he was not a party to the contract—a point we agree with. In the current litigation, Cannon asserts collateral estoppel applied because he was in privity with ROI. These positions are not inconsistent, nor do these position create a perception that either the arbitrator or the district court were misled since both positions can be true at the same time. Judicial estoppel does not stop Cannon from raising collateral estoppel as a defense.

Finally, Hodge argues equitable estoppel prevents Cannon from arguing collateral estoppel. "Equitable estoppel is the effect of the voluntary conduct of a party whereby the party is precluded, both at law and in equity, from asserting rights *against another party relying on such conduct.*" (Emphasis added.) *Petty v. City of El Dorado*, 270 Kan. 847, 853, 19 P.3d 167 (2001). For equitable estoppel to apply,

> "'[a] party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed. It must show it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts.'" *Rockers v. Kansas Turnpike Authority*, 268 Kan. 110, 116, 991 P.2d 889 (1999) (quoting *United American State Bank & Trust Co. v. Wild West Chrysler Plymouth, Inc.*, 221 Kan. 523, 527, 561 P.2d 792 [1977]).

This argument fails for the same reason as Hodge's judicial estoppel argument. Cannon objected to the arbitrator's jurisdiction over him *individually*. Now, Cannon argues the arbitration proceeding bars the claims against him because he was in privity with ROI. These are not mutually exclusive positions.

12

Hodge agrees the arbitration award was a prior judgment and it was satisfied. Cannon and ROI were in privity. All of the issues Hodge raised in its petition were litigated in the arbitration proceedings. All of the elements of collateral estoppel are met. Therefore, collateral estoppel applies to bar Hodge's litigation against Cannon personally. The district court erred when it denied Cannon's motion to dismiss based on collateral estoppel.

Affirmed in part and reversed in part.