(853 P.2d 1175)
No. 68,276
68,645

BURROWWOOD ASSOCIATES, INC., *Appellee*, v. SAFELITE GLASS
CORPORATION, *Appellant.*

Opin-
ion filed June 4, 1993.

*Walter C. Williamson*, of Law Offices of Walter C. Williamson, of Wichita,
for appellant.

*John B. Gilliam* and *Christopher A. McElgunn*, of Klenda, Mitchell,
Austerman & Zuercher, of Wichita, for appellee.

Before GERNON, P.J., PIERRON, J., and PAUL E. MILLER, District Judge, assigned.

MILLER, J.: This case arose out of a contract between Burrowwood Associates, Inc., (Burrowwood) an independent trucking company, and Safelite Glass Corporation (Safelite), whereby Burrowwood agreed to provide truck drivers for Safelite's use in delivering its products. Burrowwood claimed Safelite breached the contract, causing it to be damaged, and brought suit against Safelite claiming actual and punitive damages. Burrowwood's theories were breach of contract for failure to pay for services rendered and tortious interference with business relationships.

Other facts will be stated as may be necessary to clarify the opinion.

On appeal, Safelite first claims that the trial court erred in submitting the issue of punitive damages to the jury and, thereafter, in awarding punitive damages in a separate proceeding before the court.

Prior to the pretrial conference, Burrowwood filed a motion to amend its petition to add a claim for punitive damages. In December of 1991, the district judge who conducted the pretrial conference noted in the pretrial order that "[p]laintiff has filed a continuing motion to allow a claim for punitive damages." Thereafter, in January of 1992, a different district judge denied Burrowwood's motion to amend. At trial in March of 1992, after the close of all the evidence, yet another district judge allowed the issue of punitive damages to be submitted to the jury on Burrowwood's renewed motion. Safelite claims error. We disagree.

K.S.A. 1992 Supp. 60-3703 and the ruling in *Glynos v. Jagoda*, 249 Kan. 473, 487, 819 P.2d 1202 (1991), require that the motion to amend to plead punitive damages be filed on or prior to the date of the pretrial conference. If this is not done, a plaintiff will not be allowed to make a claim for such damages. Neither the statute nor *Glynos* require, however, that a ruling on the motion must be made at the pretrial conference. Neither the statute nor *Glynos* state that, once an order denying the motion to amend has been entered, it cannot thereafter be modified to allow such a claim.

The facts of this case point out the absurdity of the result sought by Safelite. Here, Burrowwood timely filed its motion to amend and attached supporting affidavits. Sedgwick County Judge Ron Rogg noted the filing in the pretrial order and noted it was a continuing motion.

"[S]uch order when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice." K.S.A. 1992 Supp. 60-216. See *Sieben v. Sieben*, 231 Kan. 372, 376, 646 P.2d 1036 (1982).

Thereafter, in apparent compliance with the procedure used in Sedgwick County, Judge Paul Buchanan heard the motion, determined the supporting affidavits were insufficient, and denied the motion. The case was thereafter assigned to Judge D. Keith Anderson for trial. Judge Anderson presided over the trial, and, after being fully aware of all the evidence and being satisfied of the probability that Burrowwood would prevail on a punitive damage claim, granted Burrowwood's renewed motion.

It is axiomatic that a trial judge may reverse himself or herself during the course of an action if he or she believes an incorrect ruling has been made. Had Judge Buchanan, who heard the motion in the first place, presided over the trial, he could have, without question, reversed himself once he was satisfied of the probability that Burrowwood would prevail. Safelite would have us deny to Judge Anderson, the assigned trial judge, the same authority Judge Buchanan would have had. This we will not do.

We hold that a motion to amend to allow a claim for punitive damages, when timely filed prior to the pretrial conference, may be considered and reconsidered as may be appropriate by the trial court at any and all times the issue is properly before the court, as was the case here.

Safelite next complains that punitive damages were not warranted under the facts of this case, and, even if they were, the trial court's award was excessive.

"When a verdict is challenged for insufficiency of evidence or as being contrary to the evidence, it is not the function of this court to weigh the evidence or pass on the credibility of the witnesses. If the evidence, with all reasonable inferences to be drawn therefrom, when considered in the light most favorable to the prevailing party, supports the verdict, it will not

be disturbed on appeal." *Wisker v. Hart,* 244 Kan. 36, 37, 766 P.2d 168 (1988).

"In Kansas, punitive damages are awarded to punish the wrongdoer for his malicious, vindictive, or willful and wanton invasion of another's rights, with the ultimate purpose being to restrain and deter others from the commission of similar wrongs." *Folks v. Kansas Power & Light Co.,* 243 Kan. 57, 72, 755 P.2d 1319 (1988).

Burrowwood was required to prove misconduct constituting malice on the part of Safelite as an element of its tortious interference claim. The evidence supports the jury's determination that punitive damages were proper. At Safelite's request, Burrowwood increased its number of drivers from 11 to 23. Burrowwood conducted a qualification process which included a physical examination, a written examination, a drug test, a driving test, and a three-year employment verification. Burrowwood spent substantial time and money on this process.

Within a few months, and prior to the parties being able to reduce their agreement to writing, representatives of Safelite met with Burrowwood drivers. The drivers were advised that there would be changes in Safelite's trucking operation and were provided employment applications for another trucking firm with whom Safelite had established close ties. The result was that many of Burrowwood's drivers ultimately went to work, if not for Safelite, then for the other trucking firm.

We believe that, with all reasonable inferences in favor of Burrowwood, there is substantial competent evidence to support the jury's determination that punitive damages were proper.

As to the amount awarded, it should be noted that the jury's award of actual damages on the tortious interference claim was $65,000. The trial judge, after considering the factors listed in K.S.A. 1992 Supp. 60-3702(b), awarded $65,000 as punitive damages. The amount is within the parameters considered by the court in *Tetuan v. A.H. Robins Co.,* 241 Kan. 441, 738 P.2d 1210 (1987). The amount does not shock the conscience of this court. Accordingly, it will be upheld.

For its next point of error, Safelite contends the trial court wrongly denied its motion for directed verdict on the issue of tortious interference.

When review is sought on a motion for directed verdict, the appellate court is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party opposing the motion, and, where reasonable minds could reach different conclusions based on the evidence, a directed verdict is properly denied. *Simon v. National Farmers Organization, Inc.,* 250 Kan. 676, 683, 829 P.2d 884 (1992).

The elements of the tort of interference with a prospective business advantage or relationship are:

"(1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy by the defendant; (3) that, except for the conduct of the defendant, plaintiff was reasonably certain to have continued the relationship or realized the expectancy; (4) intentional misconduct by defendant; and (5) damages suffered by plaintiff as a direct or proximate result of defendant's misconduct." *Turner v. Halliburton Co.,* 240 Kan. 1, 12, 722 P.2d 1106 (1986).

Safelite first argues that the tort claim must fail because it did not hire any of the Burrowwood drivers; Aldworth Trucking Company (Aldworth) hired them. There was ample evidence suggesting that, except for payroll administration, Safelite controlled Aldworth and that Safelite, in fact, orchestrated the transfer of Burrowwood drivers to Aldworth.

Safelite next argues that Burrowwood did not establish the last three elements of the tort of interference. Sharon Heibert, owner of Burrowwood, testified that Burrowwood could have contracted with other companies for the use of its drivers. Heibert also testified that the circumstances surrounding the breach of contract and the subsequent transfer of drivers to Aldworth/Safelite were such that Burrowwood did not have time to secure contracts under which to use the drivers. Reasonable people could disagree whether, except for Safelite's conduct, Burrowwood was reasonably certain to have continued the relationship with its drivers in an ongoing trucking enterprise.

Reasonable people could also disagree whether there was intentional misconduct constituting malice by Safelite. Evidence showed that 21 of the 22 Burrowwood drivers went to work for Aldworth. Evidence also showed that Safelite employees discussed a new contract with Burrowwood drivers, that there was

no new contract at the time of these discussions, and that Burrowwood drivers were given Aldworth job applications before Safelite even had a contract with Aldworth. Evidence of the relationship between Aldworth and Safelite could also indicate a subterfuge of some kind that reasonable people could believe contributed to the misconduct. There is sufficient evidence in the record to uphold the trial court's decision to submit the claim to the jury.

Safelite next questions the propriety of the trial court's refusal to give a requested jury instruction relating to the defense of justification. This defense to a tortious interference claim must be affirmatively pled. See K.S.A. 1992 Supp. 60-208; *Turner v. Halliburton*, 240 Kan. at 12. Safelite did not plead justification as a defense in its original or its amended answer. No mention was made of the defense in the pretrial order. In fact, the first mention of the defense was made after both sides had rested and the parties were arguing jury instructions. Safelite claims justification became an issue only after Burrowwood presented evidence of contacts between Safelite and Aldworth employees and Burrowwood drivers at trial. The trial court, says Safelite, should have allowed an amendment to the pleadings to conform to the evidence.

In fact, Burrowwood's amended petition alleges improper contacts between Safelite employees and Burrowwood employees. Further, the pretrial order echoes these contentions.

Safelite cannot claim it was without notice that Burrowwood would present evidence of improper contacts at trial. The justification defense could have been pled and could have been included in the pretrial order.

Where the pretrial order frames the issues to be tried and the order is not modified, the trial court may and should refuse any request for an instruction which is inconsistent with the order or which is not within the scope of the stated issues. *Kleibrink v. Missouri-Kansas-Texas Railroad Co.*, 224 Kan. 437, 442, 581 P.2d 372 (1978).

We find no merit to the complaint.

Further, we have reviewed Safelite's other complaints about the jury instructions and find no merit in any of them.

Safelite's last complaint relates to the trial court awarding prejudgment interest on the contract portion of Burrowwood's claim. The jury awarded Burrowwood $45,641.86 as damages on the contract claim, which was the total amount of Burrowwood's prayer. The contract under which the parties operated contained a liquidated damages clause of $5,000 for early termination of the contract. The balance of the damages awarded was for three unpaid invoices for drivers' services. There is no contest between the parties as to the $5,000 termination fee. It became due upon the termination of the contract. Since it was a fixed amount and due on a specified date, prejudgment interest was properly awarded. *Phelps Dodge Copper Products Corp. v. Alpha Construction Co.*, 203 Kan. 591, 455 P.2d 555 (1969).

The facts show, however, that the amounts due under the three invoices were in dispute. There were disagreements between the parties as to how mileage driven was to be calculated. Under *Phelps Dodge*, since there was uncertainty as to the amount due until the jury made its finding, the award of prejudgment interest on the amount of $40,641.86 was improper and should be reversed.

Affirmed in part and reversed in part.