NOT DESIGNATED FOR PUBLICATION

No. 121,190

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JONATHAN BRYCE MILLER and BARBARA LOU MILLER TRUST,
*Appellee*,

v.

KEITH D. COX and GLORIA G. COX,
*Appellants*.

MEMORANDUM OPINION

Appeal from Sumner District Court; R. SCOTT MCQUIN, judge. Opinion filed August 28, 2020. Affirmed in part, reversed in part, and remanded with directions.

*Brian E. Vanorsby* and *Ronald L. Campbell*, of Fleeson, Gooing, Coulson, & Kitch, L.L.C., of Wichita, for appellants.

No appearance by appellee.

Before GREEN, P.J., ATCHESON and GARDNER, JJ.

PER CURIAM: Gloria Cox appeals from a judgment of the trial court denying her motion to set aside default judgment. Gloria argues that the trial court erred (1) when it ruled that she did not have a meritorious defense and (2) when it ruled that her failure to timely answer plaintiff's petition for relief was inexcusable neglect. We disagree and affirm. Gloria also argues that the trial court incorrectly determined prejudgment and postjudgment interest to be awarded in this action. We agree and reverse. And so, we affirm in part, reverse in part, and remand with directions.

1

In January 2017, the Sumner County District Court entered a default judgment ordering the Coxes to pay attorney fees to the plaintiff in *Miller Trust v. Henning, et al.*, No. 12 CV 50 (Sumner County Dist. Ct.) (the underlying case).

The facts of the underlying case center on the sale of approximately 118.4 acres of property located at 1550 E. 113th Avenue North in Bell Plaine, Kansas (the Property). In June 2001, Keith and Gloria Cox sold the Property by installment contract to Gray and Lou Cinda Miller, and the Millers' business partner, Alvin Henning. The same day, Gloria and her husband executed a warranty deed conveying an undivided one-half interest to the Millers and an undivided one-half interest to Henning. The Coxes' attorney held the warranty deeds in escrow for delivery upon final payment of the installment contract.

Immediately, the Millers began making payments on the contract. In 2004, the Millers assigned their property interest to a trust named the Jonathan Bryce Miller and Barbara Lou Miller Trust, dated June 23, 1983 (Miller Trust). Miller Trust continued making the Millers' payments. Meanwhile, Henning made no payments except the initial $18,000 balance paid at signing of the 2001 contract for deed. In March 2010, the Coxes sent out a notice of default stating that Miller Trust and Henning were behind on payments. The Coxes accelerated the amount due under the contract and demanded the balance. In May 2010, Henning paid the remaining balance to the Coxes.

Once Henning paid the balance, the Coxes assigned the contract for deed to Briar Patch Investments, LLC (Briar Patch), an entity owned by Henning and John P. Smith. Miller Trust contested this assignment of contract by filing the quiet title action in the underlying case. Miller Trust argued that by assigning the contract for deed to Briar Patch, the Coxes had breached an agreement and had clouded title to the Property. Miller Trust initially named the Coxes as defendants in the underlying case. But the Coxes

2

disclaimed any interest in the property, resulting in the court dismissing them from the suit under a stipulated journal entry in 2012.

For five years, litigation in the underlying case continued without the Coxes. After a bench trial, the trial court entered a judgment for Miller Trust. The trial court partitioned the Property and assessed the costs and fees of the quiet title and partition against the Property. Miller Trust elected to take the Property at the appraised value of $260,000. Miller Trust, therefore, needed to buy Henning's half of the property at 50% of the appraised value minus costs chargeable in the partition. The trial court found that those costs were $117,700.94 in attorney fees and expenses, plus $1,555 in Commissioner's fees and expenses, for a total of $119,255.94. Then, the trial court deducted that amount from the appraised value, that is, $260,000 - $119,255.94 = $140,744.06. Thus, the amount Miller Trust would owe Henning to obtain his half-interest in the Property was $70,372.03, before considering other factors.

Next, the trial court considered contributions that Miller Trust had made to the Property, including paying property tax and removing debris that Briar Patch had dumped on the Property. The trial court found that Miller Trust's contributions totaled $78,003.61. As a result, the trial court granted the Property to Miller Trust and ordered Henning to pay $7,631.58 to Miller Trust. The litigation in the underlying case ended with this judgment, dated January 10, 2017.

On April 17, 2018, Keith Cox committed suicide. As described in declarations of Gloria and her son, Rick Cox, Gloria "has not been the same since her husband's death." The declarations stated that Gloria has had bouts of extreme grief with emotional breakdowns and has had trouble concentrating and making thoughtful decisions for herself. Also, she had become forgetful at times. Gloria also has had to deal with additional stressors after her husband's death. For example, her great-grandson was

3

diagnosed with a benign brain tumor. Two weeks later, Gloria's son told her that he had lung cancer. Another son, age 17, had trouble coping with his father's suicide.

In July 2018, Miller Trust filed the present lawsuit, naming the Coxes as defendants. The petition sought indemnification for breach of warranty of title. Miller Trust argued that the Coxes had refused to defend its title and, thus, forcing Miller Trust to pursue a quiet title action and incur attorney fees. Miller Trust served its petition and summons on the Coxes through certified mail.

When Gloria received the petition and summons, she signed for them but did not open the envelopes. Instead, she placed them in a file cabinet and forgot about them. And so, Gloria neither answered the petition nor appeared in court. The trial court entered a default judgment in favor of Miller Trust against the Coxes in the amount of $119,255.94, plus prejudgment and postjudgment interest and costs.

In October 2018, Gloria moved to set aside the default judgment. After a hearing on the motion, the trial court ruled that the judgment was not void as to Gloria but was void as to Keith Cox because he had died before the proceedings began. Also, the court ruled that Miller Trust would not be prejudiced by setting aside the default judgment.

The court also ruled that Gloria's failure to answer Miller Trust's petition was not excusable neglect. The court further ruled that Gloria had no meritorious defenses, except that the amount of the default judgment was incorrect because attorney fees had already been charged against partition sale proceeds in the underlying case. Thus, the default judgment represented a double recovery of half of the attorney fees. For this reason, the court told counsel for Miller Trust the following: "I would be willing to deny this motion if you'll reduce your judgment by half. That would then reflect the true amount of attorney fees that haven't been reimbursed." Miller Trust agreed. And the trial court

4

entered judgment for Miller Trust against Gloria for $59,627.97, plus 10 percent interest from January 10, 2017, until paid.

Gloria timely appeals the trial court's denial of her motion to set aside default judgment.

*Standard of Review*

An appeal from an order denying a motion to set aside a judgment brings up for review only the order of denial itself and not the underlying judgment. *Giles v. Russell*, 222 Kan. 629, Syl. ¶ 4, 567 P.2d 845 (1977). "A decision to set aside a default judgment rests within the discretion of the district court. This decision is subject to review under an abuse of discretion standard." *First Management v. Topeka Investment Group*, 47 Kan. App. 2d 233, 239, 277 P.3d 1150 (2012). A judicial action constitutes an abuse of discretion under the following conditions: (1) if no reasonable person would take the view adopted by the trial court; (2) if it is based on an error of law; or (3) if it is based on an error of fact. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015).

K.S.A. 2019 Supp. 60-260(b)(1) provides relief from a final judgment, order, or proceeding when there is a "mistake, inadvertence, surprise or excusable neglect." Default judgments are not favored by the law but are necessary when the inaction of one party frustrates the administration of justice. *Jenkins v. Arnold*, 223 Kan. 298, 299, 573 P.2d 1013 (1978); *Garcia v. Bell*, 303 Kan. 560, Syl. ¶ 3, 363 P.3d 399 (2015) (holding that the law "disfavors default judgments, especially in matters involving large sums of money"). The court may set aside a default judgment for good cause. In *First Management*, this court stated the following condition for good cause:

"A motion to set aside a default judgment will only be granted if the movant has proven by clear and convincing evidence '(1) that the nondefaulting party will not be prejudiced by the reopening, (2) that the defaulting party has a meritorious defense, and (3) that the default was not the result of inexcusable neglect or a willful act.'" *First Management*, 47 Kan. App. 2d at 239 (quoting *Montez v. Tonkawa Village Apartments*, 215 Kan. 59, 64, 523 P.2d 315 [1974]).

In determining whether a plaintiff will be prejudiced by setting aside a default judgment, the normal burdens associated with the trial process do not constitute prejudice. A party is not prejudiced by having to establish at trial his or her entitlement to a judgment. *French v. Moore*, No. 102,170, 2010 WL 481280, at \*3 (Kan. App. 2010) (citing *Montez*, 215 Kan. at 65). Prejudice to the nondefaulting party results under the following conditions:  (1) if it has undertaken action in reliance on the default judgment, (2) if its ability to pursue its claim has been hindered since the entry of default, or (3) if evidence has been destroyed. *Garcia*, 303 Kan. at 571; *French*, 2010 WL 481280, at \*4.

Here, the trial court ruled that Miller Trust would not be prejudiced. This issue is not disputed on appeal. The *Montez* factors remaining on appeal are whether Gloria has a meritorious defense and whether the default was not the result of inexcusable neglect. Gloria also argues that the trial court erred in the way it assessed prejudgment and postjudgment interest.

*Did the Trial Court Err in Ruling That Gloria Had No Meritorious Defenses?*

Gloria argues that the trial court erred in denying her motion to set aside the default judgment on the grounds that she had no meritorious defenses. First, Gloria maintains that the trial court misapplied the legal standard for setting aside a default judgment. Second, she contends that the default judgment was a double recovery. Third, she argues that Miller Trust had no right to indemnification. Finally, she argues that she has a meritorious defense based on the statute of limitations.

6

K.S.A. 2019 Supp. 60-260(b) permits a trial court to set aside a final judgment for the following reasons:

"(1) Mistake, inadvertence, surprise or excusable neglect;

. . . .

"(4) the judgment is void;

. . . .

"(6) any other reason that justifies relief."

In arguing that subsection (6) applies, Gloria contends that the trial court erred in saying, "I suppose I can still set it aside under 60-260(b)(6). That's a catchall. I think courts are reluctant to use that." Gloria asserts that the trial court's statement is at odds with our Supreme Court's decision in *Garcia*, which holds that Kansas courts should favor setting aside default judgments. 303 Kan. at 570-71.

In *Garcia*, George Michael Garcia retained criminal defense attorney Charles Ball to represent him in a probation revocation proceeding. An uncaught error on the journal entry of sentencing ultimately led to Garcia serving more time in prison than his original sentence. Garcia sued Ball for legal malpractice. Ball was served with the petition and received two extensions of time but failed to file a timely answer. Garcia moved for default judgment which the trial court granted. Ball moved to set aside the default judgment under K.S.A. 2019 Supp. 60-260(b)(1) and (b)(6). The trial court granted Ball's motion and set aside the default judgment, ruling that Ball had asserted meritorious defenses.

On appeal, this court held that the trial court abused its discretion because "Ball provided no reason—let alone evidence—to support his claim of excusable neglect, and the existence of such a reason and some evidence supporting it is a necessary prerequisite to setting aside a judgment based on an excusable-neglect claim." 303 Kan. at 565. This

7

court declined to decide whether Ball was entitled to relief under K.S.A. 60-260(b)(6), holding that the subsection does not apply when a party's claim for relief is covered by (b)(1). 303 Kan. at 565.

Our Supreme Court reversed, holding that (b)(6) could apply where (b)(1) does not. 303 Kan. at 567. The court held that the trial court was correct to set aside the default judgment for two reasons: (1) The movant had meritorious defenses and (2) the law disfavors default judgments. 303 Kan. at 570. And the court held: "In determining whether to set aside a default judgment, a court should resolve any doubt in favor of the motion so that cases may be decided on their merits." 303 Kan. at 568 (quoting *Jenkins*, 223 Kan. at 299).

Considering the before-mentioned statement in *Garcia*, we note that Gloria correctly points out that the trial court should have been reluctant to deny her motion rather than reluctant to grant it. She asserts that the trial court abused its discretion because it was "guided by an erroneous legal conclusion." *Bereal v. Bajaj*, 52 Kan. App. 2d 574, 580, 371 P.3d 349 (2016). She also argues that reversing the trial court and setting aside the default judgment would serve the interests of justice and equity.

But the erroneous approach of the trial court would not, by itself, be sufficient to reverse and remand for further proceedings. Gloria still must show that she has a meritorious defense to be entitled to relief under K.S.A. 2019 Supp. 60-260(b)(6). *Akesogenx Corp. v. Zavala*, 55 Kan. App. 2d 22, 46-49, 407 P.3d 246 (2017). Alternatively, if she could show excusable neglect, she would be eligible for relief under K.S.A. 2019 Supp. 60-260(b)(1). *Garcia*, 303 Kan. at 567.

*Double Recovery*

Gloria contends that she had a meritorious defense based on the default judgment being a double recovery. She notes that Miller Trust had already recovered attorney fees in the underlying case. The trial court here correctly determined that Miller Trust had already received half of its fees. The trial court in the underlying case charged the attorney fees to the partition proceeds, beginning with the Property's appraised value of $260,000. From the total $260,000, the court subtracted the fees of $119,255.94. Subtracting the fees from the total meant that the fees were deducted from both Miller Trust's half and Henning's half. That is, Miller Trust's portion of the proceeds was reduced by $59,627.97 because of attorney fees, but so was Henning's portion of the proceeds. Simply put, they each paid half of Miller Trust's attorney fees when the expenses were charged against the Property that both parties owned. Therefore, the default judgment of the total $119,255.94 erroneously allowed for a double recovery.

After finding this miscalculation, the trial court did not abuse its discretion in its manner of correcting the error. Under K.S.A. 2019 Supp. 60-260(a), the trial court could "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order or other part of the record." The court may correct a mistake on a motion or on its own, with or without notice. "The discretion of the court should be guided by equitable principles and the interest of the party who received the judgment, as well as the moving party, must be considered. Needless to say, the court must diligently protect against the protraction of litigation." *In re Hargreaves' Guardianship and Estate*, 201 Kan. 50, 55, 439 P.3d 373 (1968).

Therefore, Gloria is incorrect that the improper double recovery of attorney fees constitutes a meritorious defense. The trial court corrected the judgment by accounting for the fact that Henning had already compensated Miller Trust for half of the attorney fees in the underlying case. The court may have inartfully described what it was doing by

9

asking Miller Trust to agree to reduce its judgment by half, but this does not end our inquiry. When a court enters a judgment in favor of a party, that judgment is the court's and not the party's. See *Cole v. Cole*, 172 Kan. 220, 223, 240 P.2d 141 (1952) (defining judgment as "decision of the court"). Nevertheless, the court here corrected its accounting error in the original default judgment. The court did not abuse its discretion by using its authority under K.S.A. 2019 Supp. 60-260(a) to correct an oversight which would have resulted in a double recovery. Thus, the amount of the judgment does not give Gloria a meritorious defense to the judgment.

*Breach of Warranty*

Gloria presents another argument:  that Miller Trust has no right of recovery regardless of the amount. But the argument Gloria presents to us is different from the one she made before the trial court. This difference is more than a simple rewording or additional authority provided. Before the trial court, Gloria simply argued that she and her husband never promised to indemnify Miller Trust in any document. Miller Trust argued that the language of the warranty of title created an indemnity right.

To settle this point, the trial court reviewed the warranty of title and correctly determined that the Coxes promised to indemnify the buyers. This court has held that "[t]he general effect of a covenant of warranty is that the grantor agrees to compensate the grantee for any loss which the grantee may sustain by reason of a failure of the title which the deed purports to convey, or by reason of an encumbrance on the title." *RAMA Operating Co., Inc. v. Barker*, 47 Kan. App. 2d 1020, 1026, 286 P.3d 1138 (2012). K.S.A. 58-2203 requires that a warranty deed, in substance, provides that "the grantor will warrant and defend the same against all lawful claims." The warranty deed here conveys a property interest in fee simple before promising that the Coxes "will WARRANT AND FOREVER DEFEND the [Property] . . . , against . . . all and every person or persons whomsoever lawfully claiming" a competing property interest. The

10

trial court correctly decided that the warranty deed here complied with K.S.A. 58-2203 and created a right of indemnity.

On appeal, however, the focus of Gloria's argument has shifted to whether there was a breach of the warranty of title. She argues that Miller Trust had superior title against other claimants, as shown by the fact that Miller Trust prevailed in its quiet title action. And so Gloria contends that the warranty of title was never breached and that the Coxes had "no duty to defend" the title against "an intruder, or . . . any one else, without lawful right and superior title." *Bedell v. Christy*, 62 Kan. 760, 763, 64 P. 629 (1901). Gloria cites this court's previous holding that "[i]n Kansas, there can be no breach of a covenant of title in a warranty deed unless the third party's claim is superior to the title or possessory rights of the grantee." *RAMA Operating Co.*, 47 Kan. App. 2d at 1025.

In sum, Gloria's grounds for maintaining that Miller Trust has no right of recovery have shifted substantially. Her motion to set aside the judgment failed to argue that no breach occurred. Miller Trust had no opportunity to respond to this argument. More importantly, the trial court had no opportunity to consider it. Issues not raised before the trial court cannot be raised on appeal. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011). Also, the trial court could not have abused its discretion by failing to consider the merits of a defense that was never raised before it.

*Statute of Limitations*

Similarly, Gloria's argument on the statute of limitations changed between the trial court and the appellate court. In her motion to the trial court, she relied on K.S.A. 60-511(1), which states that an action upon any agreement, contract, or promise in writing shall be brought within five years. Miller Trust's petition stated that it was forced to pursue a quiet title action in 2010, when the Property was paid off in full and the Coxes assigned the contract to Briar Patch, "thereby clouding title." Gloria argued to the trial

11

court that any claims against her accrued in 2010 because that is when the alleged breach of contract occurred. She argued that Miller Trust's claims here, filed in 2018, would be time barred.

On appeal, Gloria instead relies on K.S.A. 60-511(3), which says that "[a]n action brought on a covenant of warranty contained in any deed of conveyance of land" shall be brought within five years "after there shall have been a final decision against the title of the covenantor in such deed." She notes that no final decision has been made against Miller Trust's title, but rather the opposite. Miller Trust prevailed in its quiet title action. Thus, Gloria abandons the statute of limitations defense because the five-year clock never started ticking, since the condition precedent never occurred. Instead, she argues that the statute of limitations further shows why she never breached the warranty of title, as described in the preceding paragraphs. Here again, Gloria contends for the first time on appeal that the warranty was not breached. The trial court did not abuse its discretion by failing to address the merits of a defense that Gloria never presented to the trial court.

Under *Garcia*, Gloria must show the existence of a meritorious defense for the trial court to set aside the default judgment under K.S.A. 2019 Supp. 60-260(b)(6). Gloria presented one additional defense to the trial court by arguing that the judgment was void. A void judgment would be a meritorious defense, and K.S.A. 2019 Supp. 60-260(b)(4) specifically addresses void judgments.

*Did the Trial Court Err by Ruling That the Judgment Was Not Void?*

Gloria argues that the trial court should have ruled that the default judgment was void as to her because it was void as to her husband. She argues that the trial court should have set aside the default judgment under K.S.A. 2019 Supp. 60-260(b)(4). The trial court partly agreed and partly disagreed with her argument and was correct on both counts.

12

To begin, she argues that the judgment was void as to her husband because a person who dies before receiving service of process of the summons can never become a party to the lawsuit. See *Le v. Joslin*, 41 Kan. App. 2d 280, 290, 202 P.3d 677 (2009). Gloria's husband died in April 2018. She received the summonses by certified mail in July 2018. The court correctly ruled that the judgment against Gloria's husband was void.

Gloria next argues that because the judgment is void as to one defendant, it is void as to both. She argues that when one joint obligor defaults, judgment cannot be entered until there is an adjudication as to the other. She relies on our Supreme Court's holding in *Reliance Insurance Companies*, 214 Kan. 110.

Reliance Insurance Companies and Maryland Casualty Company (Reliance) paid an insurance claim from a fire at Royal Cleaners Inc. Reliance then filed a subrogation claim against the manufacturer of the clothes dryer that started the fire, Huebsch Originators of Milwaukee, Wisconsin (Huebsch), and the company that installed the dryers, Thompson-Hayward Chemical Company (Thompson-Hayward). Huebsch timely answered the petition, but Thompson-Hayward did not. The trial court granted a default judgment against Thompson-Hayward. Reliance dismissed its claims against Huebsch and sought to recover all damages from Thompson-Hayward. 214 Kan. at 118. Thompson-Hayward moved to set aside the default judgment which the court denied.

Our Supreme Court held that the trial court abused its discretion by not setting aside the default judgment. And the court held as follows: "Thompson-Hayward and Huebsch as co-defendants were charged with joint liability. [Reliance], by dismissing the action against Huebsch prevent[ed] an adjudication of the merits. We do not believe the necessity of default mandates such an inequity." 214 Kan. at 118. Where one of several defendants who is alleged to be jointly and severally liable defaults, judgment should not

be entered against the defaulting defendant until the matter has been adjudicated with respect to all defendants or all defendants have defaulted. 214 Kan. at 118.

But Gloria's reliance on *Reliance* is misplaced. No evidence established whether Thompson-Hayward or Huebsch caused the fire. Yet Huebsch had no liability and Thompson-Hayward was liable for the full amount of damages because Thompson-Hayward missed the deadline to file an answer by two business days. Our Supreme Court held that to assign liability through default in this way was "incongruous and illegal." 214 Kan. at 118. But the tort liability in *Reliance* is unlike the breach of warranty here. Here, Gloria and her husband were responsible for the same act and there is no way of assigning more or less liability to Gloria than to her husband. Further, the judgment against Gloria's husband was dismissed as void, so there was a final adjudication with respect to him.

Additionally, no Kansas case has held that dismissing a judgment as void against a decedent makes the judgment void in its entirety. Gloria urges this court to adopt the position of the Appellate Court of Illinois in *State Bank of Prairie du Rocher, Ill. v. Brown*, 263 Ill. App. 312, 1931 WL 3152 (1931). In *Brown*, a bank sued three individuals who were jointly liable on a note. None of them answered and one of them was deceased. The trial court entered default judgment, causing the two living defendants to move to set aside the judgment. The appellate court held that the trial court erred by not setting aside the default judgment.

*Brown* is unpersuasive. Aside from being an intermediate court opinion from another state from 1931, the rule set forth in *Brown* has not be used in any case since, even in Illinois. Further, the holding was specific to that state. In that regard, the *Brown* court held the following: "In Illinois, a joint judgment against several defendants, whether rendered in an action upon contract, or in tort, is a unit, and cannot be separated into parts." 263 Ill. App. at 315. Kansas courts have not adopted this rule that a judgment

void for a decedent is void for all defendants. The judgment here was not void and the trial court did not abuse its discretion.

*Did the Trial Court Err in Ruling That Gloria's Failure to Answer Miller Trust's Petition Was the Result of Inexcusable Neglect?*

Gloria argues that the trial court should have set aside the default judgment for excusable neglect under K.S.A. 2019 Supp. 60-260(b)(1). She argues that the trial court abused its discretion because it failed to give any weight to the circumstances in which she found herself in when she was sued. She points to the suicide of her husband of 65 years, the diagnosis of her son's lung cancer, the brain tumor of her great-grandson, and the care of her 17-year-old son. She maintains that these events took a toll on her that manifested in extreme bouts of grief, substantial weight loss, and forgetfulness. Under these circumstances, Gloria argues that her neglect was of the same excusable kind that prompted our Supreme Court to set aside the default judgment in *Montez*.

Turning to the facts in *Montez*, we note that Evelyn and Manuel Montez sued Tonkawa Village Apartments (Tonkawa) after Evelyn fell on some icy steps. A deputy sheriff served the summons and petition on the resident manager for Tonkawa. The manager placed the papers on his desk and neither he nor anyone else ever saw them again. He also neglected to discuss the papers with his superiors, erroneously assuming that they had also received copies. Tonkawa filed no answer and the trial court entered a default judgment.

Our Supreme Court determined that this was excusable neglect. While no clear definition of excusable neglect exists, our Supreme Court has equated it with "reckless indifference" and distinguished it from "the unintentional inadvertence or neglect common to all who share the ordinary frailties of mankind." 215 Kan. at 65. The *Montez* court explained that a litigant should not be unnecessarily penalized for the simple

15

neglect of its agent. 215 Kan. at 63-64 (citing *Tolson v. Hodge*, 411 F.2d 123 [4th Cir. 1969]; *Henry v. Metropolitan Life Ins. Co.*, 3 F.R.D. 142 [W.D. Va. 1942]; *Ellington v. Milne*, 14 F.R.D. 241 [E.D.N.C. 1953]; and *Trueblood v. Grayson Shops of Tennessee, Inc.*, 32 F.R.D. 190 [E.D. Va. 1963]). The common thread through *Montez* and the cases cited in *Montez* is neglect by an agent unfairly affecting the principal. The *Montez* court focused on a premise that a principal should not be harmed or penalized for the negligence of an agent. This factor is not present here because Gloria received service herself.

Our research has found no Kansas authority that is factually like this case. Gloria, however, offers up a precedent from another jurisdiction for our consideration. In *Tradesmens National Bank & Trust Co. v. Cummings*, 38 N.J. Super. 1, 118 A.2d 80 (1955), a debtor failed to file an answer after receiving a petition and summons. The court entered a default judgment against him. The debtor moved to set aside the judgment because of excusable neglect. In support of his motion, he testified that "he was 77 years old and in a terribly upset physical condition due to the death of his wife and the very serious illness of his son," who had a brain tumor. 38 N.J. Super. at 4. The trial court ruled that the debtor's neglect was excusable and set aside the default judgment. The plaintiff bank appealed, and the appellate court affirmed, holding that the trial court did not abuse its discretion in setting aside the default judgment.

The factual similarities between *Cummings* and the case here might persuade a court to also set aside the judgment in this case were it not for two marked differences. First, the *Cummings* court decided that the trial court had not abused its discretion by *granting* the motion. Second, in *Cummings*, the defendant had already, in prior bankruptcy proceedings, scheduled the plaintiff as a creditor and had been discharged, which constituted an absolute defense. 38 N.J. Super. at 5. Thus, *Cummings* stands in stark contrast to the case here because it is dissimilar in two key respects.

16

Hypothetically, if Gloria had presented evidence in the form of testimony or proof that she was severely depressed and she was unable to attend to everyday needs, her conduct of signing for the petition and summons and placing them in a file cabinet and forgetting about them could have shown excusable neglect. We note, however, that the record contained two declarations from Gloria and her son, Rick, concerning Gloria's mental condition. But without some testimony or proof tending to confirm Gloria's mental condition when she was served with the petition and summons, we conclude that the declarations were insufficient to show excusable neglect and, thus, the trial court properly ruled that Gloria had failed to show excusable neglect.

*Did the Trial Court Err in Setting the Prejudgment or Postjudgment Interest?*

Allowance of prejudgment interest on a liquidated claim under K.S.A. 16-201 is a matter of judicial discretion subject to reversal only upon a showing of an abuse of discretion. *Owen Lumber Co. v. Chartrand*, 283 Kan. 911, 925, 157 P.3d 1109 (2007); *In re Metcalf Associates-2000*, 42 Kan. App. 2d 412, 424, 213 P.3d 751 (2009).

Gloria correctly argues that even if the judgment is allowed to stand, the trial court erred by awarding prejudgment interest and by misstating the postjudgment interest rate. On prejudgment interest, she argues that prejudgment interest can only be awarded on a liquidated amount. She notes that the amount was not known to the parties until the trial court entered its corrected judgment of $59,627.97. She stresses that if she had paid Miller Trust when it e-mailed its first demand letter, then she would have paid Miller Trust the wrong amount. Gloria argues that this is the opposite of a liquidated amount.

In Kansas, prejudgment interest is allowable only on liquidated claims. A claim is liquidated when both the amount due and the date due are fixed and certain or ascertainable by mathematical computation. *Chartrand*, 283 Kan. at 925. When the amount of damages is not liquidated until the judgment is entered, then prejudgment

17

interest is not appropriate. *Arrowhead Construction Co. of Dodge City v. Essex Corp.*, 233 Kan. 241, 251, 662 P.2d 1195 (1983) (finding that "the amount of damages was not liquidated until the trial court found there was a contract for $1.35 per square foot and entered judgment accordingly").

In *Burrowwood Associates, Inc. v. Safelite Glass Corp.*, 18 Kan. App. 2d 396, 402, 853 P.2d 1175 (1993), Burrowwood Associates, Inc. (Burrowwood) contracted to provide truck drivers to deliver Safelite Glass Corporation's (Safelite) products. Burrowwood later sued Safelite for breach of contract for failure to pay for services rendered and tortious interference with business relationships, claiming actual and punitive damages. The contract contained a liquidated damages clause of $5,000 for early termination of the contract, due upon termination. This court found that prejudgment interest was properly awarded because this amount was liquidated, that is, a specified amount on a specified date. But the jury awarded an additional $40,641.86. Nevertheless, this court held that "since there was uncertainty as to the amount due until the jury made its finding, the award of prejudgment interest on the amount of $40,641.86 was improper and should be reversed." 18 Kan. App. 2d at 402.

Here, Gloria's warranty deed did not specify an amount of damages for failing to "warrant and forever defend" Miller Trust's title, nor did it specify a date for payment. The warranty deed also did not specify a method for calculating such damages, whether it be actual attorney fees, reasonable attorney fees, sale price of the property, diminution of property value, or other. Without a method for determining damages, the amount was not certain or even "ascertainable by mathematical computation." *Chartrand*, 283 Kan. at 925. The trial court determined the principal on which interest accrued was the unreimbursed attorney fees in the underlying case. The trial court ordered that prejudgment interest would begin on the date that judgment was entered in the underlying case. These terms were not specified by contract, unlike the liquidated damage amount of $5,000 owed because of early termination of the contract in *Burrowwood*. The judgment

18

of the court here provided both the liquidated damage amount and the date for payment, which was error. And, thus, the trial court abused its discretion by awarding prejudgment interest on damages that were not liquidated.

Also, Gloria correctly argues that the trial court erred in stating that the 10% per annum interest would continue until "paid in full." She argues that the trial court mixed together prejudgment and postjudgment interest. She further argues that the 10% rate would only apply to prejudgment interest, but that rate would change once the court entered judgment.

Postjudgment interest rate is governed by statute and is purely a question of law over which this court has unlimited review. *Delta Groups Engineering, Inc. v. Sprint Spectrum, L.P.*, No. 100,920, 2010 WL 1882143, at *17 (Kan. App. 2010) (unpublished opinion). For comparison, prejudgment interest is set "at the rate of ten percent per annum, when no other rate of interest is agreed upon." K.S.A. 16-201; *Farmers State Bank v. Production Credit Association of St. Cloud*, 243 Kan. 87, 103, 755 P.2d 518 (1988). But postjudgment interest changes on July 1 of each year. K.S.A. 16-204; *ARY Jewelers, LLC v. Krigel*, 277 Kan. 464, 471-72, 85 P.3d 1151 (2004).

Here, the trial court's award of postjudgment interest at 10% "until paid in full" does not align with K.S.A. 16-204(e). The trial court abused its discretion because the postjudgment interest ordered is based on an error in law. The judgment of the court is reversed, and the case remanded with directions to vacate prejudgment interest and recalculate postjudgment interest.

Affirmed in part, reversed in part, and remanded with directions.

19